## CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* UNITED STATES ET AL.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 95. Argued November 30, 1927.—Decided January 3, 1928.

1. Paragraph 22 of § 1 of the amended Interstate Commerce Act (added by Transportation Act, 1920) which declares that the authority of the Commission conferred by paragraphs 18–21 shall not extend to the construction or abandonment of spur, industrial, team, switching or side tracks, located or to be located wholly within one State, refers to tracks built by the carrier as part of its railroad and does not destroy the power of the Commission under paragraph 9 (from Act of June 29, 1906) to require switch connections with private sidings built by shippers. P. 407.

2. The mere fact that a shipper's side track with which a connection is sought extends to an industry located on another railroad will not make the switch connection or the track of the shipper, or both combined, an extension of the railroad with which the connection is sought, within the meaning of paragraphs 18 to 21. P. 408.

3. The possibility that in the future a shipper's side track may be used by carriers whose lines it crosses does not render its mere construction and operation an extension of the lines of those carriers within the meaning of paragraph 18. P. 409.

4. A rule of state law that a side track crossing a highway is a part of railroads with which it connects and subject to public use, does not require the Interstate Commerce Commission, when ordering a railroad to establish a switch connection with such a side track for use in interstate commerce, to make the findings of public convenience and necessity which are necessary in proceedings under paragraphs 18 to 21. P. 410.

5. A state court annulled an order of a state commission which required an interstate carrier to establish a switch connection with a shipper's side track on the ground that the character of the side track brought the case within the provisions of paragraphs 18 to 21, and the exclusive jurisdiction of the Interstate Commerce Commission. *Held* that this did not preclude the shipper from seeking relief, or the Commission from proceeding, under para-

graph 9 rather than paragraphs 18 to 21, where the case properly fell within the former paragraph. P. 411.

6. A shipper may be entitled to a switch connection with an interstate railroad under paragraph 9, although his siding track is already connected with another interstate railroad. P. 412.

7. The right of a shipper who has built his siding to compel a switch connection under paragraph 9, is not dependent on his having shipped over the line to be connected with. P. 413.

8. The question whether the building of a private side track by a coal corporation was in excess of its powers under the state law, is not open in a suit to set aside an order of the Interstate Commerce Commission made under paragraph 9, requiring a railroad to make a switch connection with the side track. P. 413.

9. It is the duty of the District Courts to deliver opinions expressing the grounds of their decisions in cases of this character. P. 414.

Affirmed.

APPEAL from a decree of the District Court dismissing a bill to set aside an order of the Interstate Commerce Commission, requiring the Railway Company to construct a switch connection with a private siding or spur of a coal company.

*Mr. George B. Gillespie,* with whom *Messrs. H. N. Quigley* and *S. W. Baxter* were on the brief, for appellant.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

*Mr. Patrick J. Farrell,* with whom *Mr. E. M. Reidy* was on the brief, for the Interstate Commerce Commission.

*Messrs. James M. Sheean* and *Clarence B. Cardy* were on the brief for J. K. Dering Coal Company.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Paragraph 9 of § 1 of the Interstate Commerce Act as amended provides that "Any common carrier subject to

the provisions of this Act, upon application of . . any shipper tendering interstate traffic for transportation, shall construct, maintain, and operate upon reasonable terms a switch connection with any . . private side track which may be constructed to connect with its railroad, where such connection is reasonably practicable and can be put in with safety and will furnish sufficient business to justify the construction and maintenance of the same "; and it authorizes the Interstate Commerce Commission upon complaint and hearing to enforce performance of that duty. Act of June 29, 1906, c. 3591, § 1, 34 Stat. 584, 585; Act of June 18, 1910, c. 309, § 7, 36 Stat. 539, 547; Act of Feb. 28, 1920, c. 91, § 401, 41 Stat. 456, 475.

J. K. Dering Coal Company, which owns a large mine located on the Illinois Central Railroad, desired a direct connection also with the railroad commonly known as the Big Four. To this end, it built a private track, about three and a half miles long, from its mine to the right of way of the Big Four. Thereafter, it applied to the Interstate Commerce Commission, under paragraph 9 of § 1, for an order requiring the Big Four to construct, maintain, and operate the desired switch connection. The mine, its track and the proposed connection are wholly within the State of Illinois. Upon full hearing, the Commission found the facts which, under that paragraph, must exist before a shipper can require the railroad to construct a connection. That is, it found that the Coal Company had built its track up to the right of way of the railroad; that it had made application in writing for the connection; that it had tendered interstate traffic; that the business was sufficient to justify the construction and maintenance of the proposed connection; that the connection is reasonably practicable and can be put in with safety; and that the connection should be constructed and maintained by

the railroad. Thereupon, the Commission entered the order prayed for. *J. K. Dering Coal Co. v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.,* 96 I. C. C. 143; 109 I. C. C. 55.

The Big Four brought this suit against the United States and the Coal Company in the federal court for northern Illinois to set aside that order. The Commission intervened as defendant. The case was heard before three judges upon motion for an interlocutory injunction, which was denied. Later, upon final hearing, a decree was entered dismissing the bill. That decree is here on appeal, under Urgent Deficiencies Act, October 22, 1913, c. 32, 38 Stat. 208, 220, and § 238 of the Judicial Code as amended by Act of February 13, 1925, c. 229, 43 Stat. 936, 938.

The District Court did not make findings of facts, render an opinion, or indicate by recital in the decree the grounds of its decision. The abridged record occupies 492 printed pages, besides numerous exhibits. There are 21 assignments of error. And the appellant's briefs fill more than 200 pages. No irregularity in the proceedings before the Commission is suggested. It is urged that some essential findings of fact made by the Commission are without support; but the evidence is clearly ample. The claim of invalidity is rested mainly upon contentions of an entirely different nature. These are numerous; and all are groundless. But, because they are peculiar in character and novel, they must be stated in detail.

*First.* It is contended that the power of the Commission, under paragraph 9, to require the construction of a switch connection with a side track built by a shipper and

---

[1] The Illinois Central Railroad Company and the Southern Illinois Railway and Power Company were also joined as defendants; but as to them the bill was dismissed, on motion of plaintiff, before entry of the decree under appeal.

located wholly within one State, was abrogated by paragraph 22, which was added to § 1 of the Interstate Commerce Act by Transportation Act, 1920. Act of February 28, 1920, c. 91, § 402, 41 Stat. 456, 478. Paragraph 22 declares: " The authority of the Commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching or side tracks, located or to be located wholly within one State. . . ."

Paragraph 22 in no way affects the power conferred by paragraph 9. By its terms, it operates as a limitation only upon the authority conferred upon the Commission in 1920 by paragraphs 18 to 21. These paragraphs relate to the construction, acquisition, extension and abandonment of a railroad. They deal primarily with rights sought to be exercised by the carrier. Compare *Railroad Commission* v. *Southern Pacific Co.*, 264 U. S. 331, 345; *Texas & Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co.*, 270 U. S. 266; *Alabama & Vicksburg Ry. Co.* v. *Jackson & Eastern Ry. Co.*, 271 U. S. 244, 249. In denying their application to side tracks or spurs, paragraph 22 refers to tracks built by the carrier as a part of its railroad. Compare *Swift & Co.* v. *Hocking Valley Ry. Co.*, 243 U. S. 281, 285, 290. Paragraph 9, on the other hand, relates to switch connections with private sidings built by the shipper. The power to compel such had been granted to the Commission by the Act of June 29, 1906, c. 3591, § 1, 34 Stat. 584, 585. Furthermore, Congress gave explicit proof that in adding paragraph 22 to § 1, it meant to leave paragraph 9 unaffected. For Transportation Act, 1920, provided specifically that the paragraph concerning switch connections, which as it then stood was unnumbered, should (without change) be numbered 9. Act of February 28, 1920, c. 91, § 401, 41 Stat. 456, 475.

*Second.* It is contended that if the authority given the Commission by paragraph 9 was not abrogated by the en-

actment of paragraph 22, its exercise in the present case
was subject to the requirements of paragraphs 18 to 21,
and that the Commission's order is void for non-compli-
ance therewith. The contention has two phases. In the
first place, it is said that if the switch connection is made,
the side track, by enabling the Big Four to reach into
territory hitherto served wholly by another carrier, will
become an extension of its lines within the meaning of
paragraph 18. Compare *Texas & Pacific Ry. Co.* v. *Gulf,
Colorado & Santa Fe Ry. Co.*, 270 U. S. 266; *Marion &
Eastern R. R. Co.* v. *Missouri Pacific R. R. Co.*, 318 Ill.
436, certiorari denied, 271 U. S. 661. This argument pro-
ceeds from the same misconception of the purpose of
paragraphs 18 to 21 as does the argument discussed above.
These paragraphs deal with construction and abandon-
ment on the part of the carrier, not with side tracks built
by the shipper. Furthermore the order gave the Big Four
no trackage rights over the Coal Company's track. The
mere fact that a side track with which a connection is
sought extends to an industry located on another railroad
does not make the switch connection or the track of the
shipper, or both combined, an extension of the railroad
within the meaning of paragraphs 18 to 21.

The Big Four appears to place greater reliance on the
other phase of the contention. The Coal Company's
track crosses at grade, in addition to three highways, the
tracks of the Illinois Central and the Southern Illinois.
There is an agreement between these carriers and the
Coal Company under which, by means of appropriate
switch connections which it is physically possible to make,
trains from these other lines could pass over the track, and
thus, as is contended, tap territory now tributary to the
Big Four. The argument is that because of the possibili-
ties of the use of the track by these other carriers, it is an
extension within the meaning of paragraph 18. *Texas &
Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co.*,

*supra.* But no such connection has been made or attempted or threatened; and neither the Illinois Commerce Commission nor the Interstate Commerce Commission has authorized such connection or use. If the track is used by the Illinois Central or the Southern Illinois in the manner described, paragraph 20 of § 1 furnishes the appellant with an appropriate remedy. *Texas & Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co., supra.*

*Third.* It is contended that, regardless of the fact that the order of the Commission provides only for a switch connection with the siding of the Coal Company, the siding must be regarded as an extension within the meaning of paragraphs 18 to 21, because under the law of Illinois, all tracks which cross highways are deemed public tracks, and this track crosses highways. It is true that, under § 45 of the Public Utilities Act of the State, Cahill's Illinois Revised Statutes (1925), Chap. 111a, par. 60, a switch track, though built by an industry and used in connection with it, is a part of the railroad subject to public use. *Public Utilities Commission* v. *Smith,* 298 Ill. 151; *St. Louis, Springfield & Peoria R. R.* v. *Commerce Commission,* 309 Ill. 621. But, obviously, a State cannot, in respect to the regulation of interstate commerce, override the will of Congress. *Napier* v. *Atlantic Coast Line,* 272 U. S. 605. The Commission was given the authority to compel an interstate carrier to construct a switch connection with a side track built by an industry. The State cannot curtail the Commission's power over interstate commerce by denying it authority to compel a connection with such a side track unless the circumstances are such that public necessity and convenience require an extension of the railroad under paragraphs 18 to 21. Compare *Colorado* v. *United States,* 271 U. S. 153; *Alabama & Vicksburg Ry. Co.* v. *Jackson & Eastern Ry. Co.,* 271 U. S. 244. As the Commission said, when making the

order: "We, of course, are not concerned with the character of the track with respect to intrastate commerce." 109 I. C. C. 55, 57.

*Fourth.* It is contended that the Coal Company is estopped by certain proceedings in the state courts from denying that the track from the mine to the right of way of the Big Four is an extension, within the meaning of paragraphs 18 to 21. The facts relied upon, so far as material, are these. In 1922, the Coal Company applied to the Illinois Commerce Commission for leave to build this track, and later prayed that its use be limited to a private minelead track. The Big Four challenged the Commission's jurisdiction, on the ground that the proceeding was one to compel the connection or extension of interstate carriers and was within the exclusive control of the Interstate Commerce Commission. The Illinois Commerce Commission overruled the challenge, found for the petitioners on the merits, and, at their request, provided in its orders that the track when built and connected with the Big Four should not be used for any other purpose than to serve the mine of the Coal Company, until permission for further use should be granted by the Illinois Commission. Thereupon, the Big Four assailed the orders of the state commission in the circuit court for Saline County and was defeated there. After the validity of the orders had been affirmed by that court the track was constructed. Later, the Supreme Court of the State, reviewing the circuit court's decision, held the order of the state commission void, on the ground, urged by the Big Four, that, in spite of the limitation in the orders, the track would be, under the law of Illinois, a public track, and, hence an extension of the railroads within the meaning of paragraphs 18 to 21; and that since the carrier was engaged in interstate commerce, the jurisdiction to compel construction of the switch vested in the Interstate

Commerce Commission, *C., C., C. & St. L. Ry. Co.* v. *Commerce Commission,* 315 Ill. 461, 476. That court said:

"This section [45 of the State Utilities Act] cannot be held to apply to situations coming under the Federal Transportation act. As to such the latter act is supreme. Nor can it be said that the legislature in enacting section 45 sought to confer on the Illinois Commerce Commission jurisdiction of those matters coming under the Federal Transportation act. The steam railways involved here are interstate carriers. That which amounts to an extension of their lines is under the sole jurisdiction of the Interstate Commerce Commission, and the Illinois Commerce Commission is without jurisdiction."

The Big Four, having, thus, convinced the state court that the order of the state commission was void because the matter is one within the jurisdiction of the federal commission, insists now that the latter cannot act because of the state decision. The judgment of the highest court of the State is, of course, conclusive in so far as it declares that the state commission exceeded its statutory powers. But, obviously, neither the legislature nor the courts of a State can limit the power of the Interstate Commerce Commission to compel connections with private side tracks. The declaration of the state court that the track which the federal authority determines is private, shall be deemed public, can not affect the validity of the order of the Interstate Commerce Commission. If it could, construction by the railroad of the switch connection with the shipper's track would not be compellable under either state or federal law. Compare *United States* v. *New York Central R. R. Co.,* 272 U. S. 457, 459.

*Fifth.* It is contended that the Coal Company is not, within the meaning of paragraph 9, a "shipper" on the Big Four, because its mine was already connected with the Illinois Central. The argument is that Congress did not intend to give a shipper the right to a direct connection

with more than one railroad. There is nothing in the Interstate Commerce Act which justifies such a limitation of the general language of paragraph 9. Coal mines are often connected with more than one railroad. Compare *United States* v. *New River Co.*, 265 U. S. 533; *In re Irregularities in Mine Ratings*, 25 I. C. C. 286, 287; *Dering Mines Co.* v. *Director General*, 62 I. C. C. 265; *Fairmont & Cleveland Coal Co.* v. *Baltimore & Ohio R. R. Co.*, 62 I. C. C. 269; *Bell & Zoller Coal Co.* v. *Baltimore & Ohio Southwestern R. R. Co.*, 74 I. C. C. 433.

*Sixth.* It is contended that the Coal Company is not a shipper on the Big Four, within the meaning of paragraph 9, because up to the time of the application to the Commission it had not actually shipped coal by this route over the Big Four. The argument is that no one, unless he is already a shipper at the time of the application to the Commission, is entitled to a switch connection. Congress imposed no such limitation. It safeguarded the expenditures of the carrier by other provisions. It limited the railroad's obligation to the building of the switch connection, leaving the burden of building the side track upon the shipper. *Winters Metallic Paint Co.* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, 16 I. C. C. 587; *Ralston Townsite Co.* v. *Missouri Pacific Ry. Co.*, 22 I. C. C. 354; *National Industrial Traffic League* v. *Aberdeen & Rockfish R. R. Co.*, 61 I. C. C. 120, 121; *Certain-Teed Products Co.* v. *Chicago, R. I. & Pac. Ry. Co.*, 68 I. C. C. 260, 263. And the railroad cannot be ordered to build the switch until after the shipper has built the private siding. *Virginia Coal & Fuel Co.* v. *Norfolk & Western Ry. Co.*, 55 I. C. C. 61; *Schlicher* v. *Director General*, 62 I. C. C. 181, 186.

*Seventh.* It is contended that the Coal Company is not a shipper on the Big Four, within the meaning of paragraph 9, because the railroad can be compelled to build the connection only with a " private side track which may

be constructed to connect with its railroad," and the track of the Coal Company, if a private track, could not be legally constructed. The argument is that, under the law of Illinois, only a public track may cross a highway; that an Illinois mining corporation has no power to build a public track; that since the Coal Company is an Illinois corporation the construction of the track was *ultra vires;* that hence, whether the track be public or private, it is an illegal structure; and that consequently it is not a track "which may be constructed" within the meaning of paragraph 9. Congress obviously did not impose upon the Interstate Commerce Commission the duty of determining, before issuing an order, whether or not a private track actually in existence had been constructed by the shipper *ultra vires.* Whether in so acting, the shipper transgressed powers conferred upon it by the State is a question which cannot be raised in this suit. If the State concludes to question the legality of the shipper's acts, it must do so in a direct proceeding instituted by it for that purpose, *Kerfoot* v. *Farmers & Merchants Bank,* 218 U. S. 281, 287.

Thus, all the contentions of the Big Four are clearly unfounded. The District Court properly refused to grant a stay of the Commission's order pending an appeal. It is difficult to believe that the appeal would have been persisted in, if that court had delivered an opinion setting forth its reasons for dismissing the bill. Where the trial court omits to state the grounds of its decision, the appellate court is denied an important aid in the consideration of the case; and the defeated party is often unable to determine whether the case presents a question worthy of consideration by the appellate court. Thus, both the litigants and this Court are subjected to unnecessary labor. *Virginian Ry. Co.* v. *United States,* 272 U. S. 658, 675. See also *Lawrence* v. *St. Louis-San Francisco Ry. Co.,* 274 U. S. 588; *Arkansas Railroad Commission* v. *Chi-*

*cago, Rock Island & Pacific R. R. Co.*, 274 U. S. 597; *City of Hammond* v. *Schappi Bus Line*, ante, p. 164; *City of Hammond* v. *Farina Bus Line & Transportation Co.*, ante, p. 173.

*Affirmed.*