## KING FEATURES SYNDICATE, Inc., v. VALLEY BROADCASTING CO., Inc., et al.

### No. 10292.

Circuit Court of Appeals, Fifth Circuit.

Jan. 27, 1943.

See, also, 42 F.Supp. 107.

M. M. Wade, of Dallas, Tex., for appellant.

W. J. Rutledge, Jr., of Dallas, Tex., for appellees.

Before SIBLEY and McCORD, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Plaintiff, a distributor of news for broadcasting, sued defendants, operators of a radio station at Reynosa, Republic of Mexico, for both accumulated weekly payments for the service and for anticipatory breach of the contract, which had an initial period of one year, according to the contention of appellant, subject to renewal for five years, unless one or the other of the parties made known in writing its purpose to discontinue not less than six months before the end of each contractual period.

Defendants plead two principal defenses (1) want of mutuality in the contract and (2) that it was rendered impossible of performance by action of the Government of Mexico in regulating the location, broadcasting channel and power of radio stations near the international border between that country and the United States, made pursuant to what is known as the Havana Treaty, which became effective on March 2, 1941, to which both nations were parties. There are certain other incidental issues, such as, in view of the fact that the Valley Broadcasting Corporation was dissolved and liquidated and the radio station taken over by Collins & Collins, a partnership, the latter entity, and its members became liable for the performance of the contract; and the further charge that it was the intention of the parties that the first year's operations should be experimental, and if satisfactory, then an agreement for a longer period would be made; and that, if plaintiff's interpretation is found correct, then the contract did not express the real understanding and it should be reformed accordingly. The provisions of the contract, dated June 19, 1940, pertinent to this case, are as follows:

"First: International News Service hereby bargains and sells to the Broadcaster the right and privilege of Broadcasting over Radio Station XEAW located

128

at Reynosa, Mexico, its report as hereinafter described, to-wit: Full night leased wire report, seven nights weekly, delivered by printer telegraph machines to Radio XEAW at Hidalgo, Texas, and agreed as far as practicable to deliver to the Broadcaster such news report.

\* \* \* \* \*

"Seventh: This agreement shall continue for five one years from September 15th, 1st, 1940, JMC, and shall thereafter renew itself continuously for periods of five years unless either party shall notify the other by registered letter received at least six months before the beginning of the first renewal period or any subsequent renewal periods, of its desire to terminate this agreement, in which event this agreement shall terminate at the beginning of the next renewal period which would have commenced thereafter; otherwise it shall remain in full force and effect, subject to all terms and conditions hereof. In the event of a sale, transfer or consolidation of the aforesaid Radio Station, the Broadcaster hereby guarantees that his successors or assignees will fulfill the terms and conditions herein contained for the full term of this agreement or any extensions thereof.

\* \* \* \* \*

"Tenth: This agreement and all its provisions are subject to the rules and regulations of the Mexican Federal Communications Commission or any other governmental or legislative body having jurisdiction over radio broadcasting."

The first question, as to whether the contract was unilateral, depends upon the legal meaning of the expression "as far as practicable". If it accorded to appellant the decision as to the circumstances under which the service would be continued, then it was without mutuality; but if it meant that performance should be had if reasonably possible, then either party can invoke the judgment of the court or jury upon the facts. While there are some decisions to the contrary, the great weight of authority is to the effect that this phrase means that the obligor shall perform if reasonably possible, within the usual conditions under which fair minded men recognize their contracts. It does not mean that, either the obligor alone, shall determine whether it is practicable, or that performance shall be required if possible, regardless of circumstances. Wooters v. International & G. N. R. Co., 54 Tex. 294;

Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1176; Cleveland, C., C. & St. L. R. Co. v. United States, 275 U.S. 404, 48 S.Ct. 189, 72 L.Ed. 338; Holyfield v. State, 124 Tex.Cr.R. 422, 63 S.W.2d 386.

Hawkinson v. Johnston, 8 Cir., 122 F.2d 724, 730, 137 A.L.R. 420, has been cited to the contrary, but we do not think it has any application. The contract there, which was a 99 year lease upon real property, had been repudiated but damages were allowed for its anticipatory breach for a limited period. The court mentioned only incidentally the matter of a unilateral contract when it said: "The rule applied by the Restatement and by Williston to such a situation is that, except in the case of a unilateral contract, or a bilateral contract that has been wholly performed on one side, for the payment of money instalments or for the performance of other acts, not connected with one another by a condition having reference to more than one of them or otherwise, any breach of a contract is total if it is accompanied by a positive repudiation of the entire contractual obligation."

There was no finding that the contract was unilateral or any discussion which throws light upon the present case.

As to the second proposition of the effects of the Havana Treaty, the lower court found as a matter of fact and law that further use by appellees of the news service of appellant was rendered impracticable by the change in broadcasting channels and location of the station, caused by the Havana Treaty.

The undisputed evidence is that at the time the contract sued upon was made the Valley Broadcasting Station was located on the Mexican side of the border. Appellant installed its machines, through which news was transmitted by teletype on the American side, about 150 feet from the bridge, and it was carried by messenger to the broadcasting station, which was about a block and a half from the other end on the Mexican side. The broadcasts were at 6:45; 8:00; 9:45; 10:00; and 10:45 P. M.; with a summary at 6:30 A. M. following. "Fresh newscasts" were thus given in the evening and at night.

In February, 1941, the Valley Broadcasting Co., a corporation was dissolved and the business was taken over by a partnership, Collins & Collins, composed of

Carr T. Collins and James M. Collins, which on the 18th of that month, wrote appellant, advising it of the fact and stating: "The same people will be handling the business. We will appreciate your billing Collins & Collins instead of the Valley Broadcasting Company in the future."

On June 24, 1941, James M. Collins, for the firm, wrote appellant, advising:

"Because of the Havana Treaty of radio we have needed to move our present transmitter to a new site. This will mean that our new transmitter will be located farther from the boundary than it is at this time. This change will therefore make it so inconvenient for us to handle the News that it will not be practical for us to continue.

"We wanted to inform you of this development in ample time so that you can make your plans accordingly. We would therefore like to drop the news service as soon as we could, in line with your regular policy.

"We have appreciated your service, and have not one criticism to offer. The service has been excellent and the co-operation splendid. Should we plan to renew our news service at any time, we would certainly contact you about it."

Appellant promptly rejected the proposal to discontinue the service, whereupon appellees notified appellant that they would not accept further service, after September 1st, 1941, and "will not pay you for this service after that date".

Appellees were unable to obtain a location within the town of Reynosa for the construction of the six to seven antennae, which cost approximately $100,000, which were made necessary to comply with the requirements of the Mexican Commission controlling such matters, and the station occupied some 150 acres of land. It was from one to one and a half miles from the International Bridge and could be reached for at least part of the way only by messenger on foot. This required 30 minutes or more, according to the testimony of appellee, James M. Collins, which is not disputed. If news received on appellant's machines was not delivered within ten minutes it was stale and of little value because it would have been "scooped" by other stations. Appellees had to adjust their station with directional antennae to prevent interference with other stations in Mexico, the United States, Canada and Cuba, who were all parties to the Havana Treaty.

Without finding it necessary to go into the question of whether the contract, as contended by appellees, was for one year, or for five as claimed by appellant, although there were certain changes or interlineations, which tended to support the position of appellees, we are constrained to agree with the court below in the holding that the provision of the contract, which excused the appellant from performing after it became impracticable, was also applicable to appellees' position, and that they were relieved from performance thus brought about by the requirements of the Mexican Government made pursuant to the Havana Treaty. John Doe et al. v. Braden, 16 How. 635, 14 L.Ed. 1090; United States v. Choctaw Nation et al., 179 U.S. 494, 21 S.Ct. 149, 45 L.Ed. 291; O'Reilly De Camera v. Brooke, D.C., 135 F. 384.

The judgment appealed from is affirmed.