**LOCAL UNION NO. 998, INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL–CIO, Plaintiff-Appellee,**

v.

**The B. & T. METALS CO., Defendant-Appellant.**

No. 14817.

United States Court of Appeals Sixth Circuit.

April 5, 1963.

John H. Leddy, Columbus, Ohio, for appellant, Porter, Stanley, Treffinger & Platt, Robert C. Perrin, Columbus, Ohio, on the brief.

Leonard Sigall, Columbus, Ohio, for appellee, Clayman & Sigall, David Clayman, Columbus, Ohio, on the brief.

Before MILLER and O'SULLIVAN, Circuit Judges, and DARR, Senior District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

This action was filed in the District Court by a local union and the International Union of United Automobile, Aircraft and Agricultural Implement Workers of America as the bargaining agent for the employees of The B. & T. Metals Company, the defendant-employer, to require the employer to arbitrate grievances in accordance with the arbitration provisions of the collective bargaining agreement, which the Union claimed had arisen under the said agreement. The defendant by its answer alleged that the grievances arose after the termination of the bargaining agreement when no collective bargaining agreement was in effect, and that, therefore, the arbitration provisions in the agreement were not applicable.

The plaintiffs filed a motion for summary judgment supported by the affidavit of W. H. Jennings, president of the local union. The defendant in opposition to the motion filed the affidavit of E. D. Wolcott, president and treasurer of the defendant company. These affidavits give the following facts.

On May 11, 1956, the defendant and the Union entered into a collective bargaining agreement which remained in force by its terms until May 3, 1958. The bargaining agreement contained a no lock-out provision on the part of the employer. Article VII thereof, dealing

with grievances and arbitration, provides:

"Step 1. If an employee shall have a grievance against the employer, it shall first be taken up by the Union Steward and the aggrieved Employee with the foreman of the Department involved. If the Grievance is of such a nature that it cannot be settled immediately, the foreman has one (1) working day in which to answer the grievance."

It then provides three more steps. in the grievance procedure prior to arbitration. Following these steps, the contract states:

"Step 5. If any grievance or other controversy is not satisfactorily adjusted as provided in Step 4, it may be submitted to arbitration at the election of either party."

Article XXIV of the bargaining agreement provides as follows:

#### "DURATION AND TERMINATION OF AGREEMENT.

"Section 1. This agreement shall remain in force until May 3, 1958 and shall automatically renew itself from year to year unless written notice of desire to terminate, or to modify, amend, or cancel any portion of any of the terms hereof is given by either party to the other not less than sixty (60) days nor more than ninety (90) days prior to the expiration of any such annual period.

"Section 2. If notice of desire to terminate or to amend shall have been given as provided in Section 1, negotiations for a new or amended agreement shall begin not later than sixty (60) days prior to the expiration of the current yearly period and shall continue until an agreement has been reached, and during such negotiations this agreement shall remain in full force and effect; provided, however, that if negotiations continue beyond the termination of the annual period either party may then terminate this agreement at any time upon ten (10) days written notice to the other party."

On February 24, 1958, Jennings signed and sent to the defendant a written notice reading as follows:

"This is a 60-day notice to you that we propose to terminate our collective bargaining contract.

"We hereby request you to meet and confer with us for the purpose of negotiating the terms of a new contract."

Pursuant to the notice, the parties met for collective bargaining purposes beginning March 11, 1958. Meetings were held throughout March and April of 1958, with Mr. Wolcott serving as chief negotiator for the Company and Mr. William Garnes, International Representative, serving as chief spokesman for the Union. There were major areas of disagreement between the parties going into the meeting of May 2, 1958. On May 2, 1958, the parties met at 10:05 A.M. Mr. Wolcott stated that the defendants rejected the Union's last proposal and offered a counter-proposal, which he said constituted the final proposal of the Company. During the discussions concerning this counter-proposal Mr. Garnes stated that Union negotiating committee did not find this proposal acceptable. Mr. Garnes asked that the employer extend the old contract pending agreement on a new one, which the employer refused to do.

According to Mr. Jenning's affidavit Mr. Garnes stated that the Union negotiating committee would present the matter to the Union members at a meeting to be held Sunday, May 4, for its acceptance or rejection; that Mr. Wolcott said that this was the Company's final proposal and he saw no need for negotiating further; that Mr. Garnes stated that the Union negotiating committee would meet with the employer's representatives on Monday, May 5, to negotiate further in the event the Local Union membership rejected the employer's proposal; that at the meeting of the Local Union member-

ship held on Sunday, May 4, the employer's proposal was turned down by a vote of the Local membership.

According to Mr. Wolcott's affidavit, Mr. Jennings stated during the discussion of the Company's proposal that the Union committee had been instructed that if no substantially different offer were made by the Company at this meeting, the committee was to end the existing contract and not agree to an extension of the contract; Mr. Garnes stated that if the membership rejected the Company's last offer the contract was at an end and accused the Company of forcing a strike; that Mr. Wolcott told Mr. Garnes that the doors would be open Monday and the employees could work despite the termination of the contract; that Mr. Garnes stated that the men would not work without a contract and that none of them would appear Monday morning; that the union committee left the meeting at 4:33 P.M. and that no further meetings were requested or scheduled by either party.

The Company did not operate Monday or Tuesday, May 5 and May 6, and when the employees came to the plant for work they were refused admittance, the employer having posted a sign which stated that the plant was closed with no admittance to employees. On May 7, 1958, the plant was opened. The employer allowed the employees to return to work and negotiations between the parties were started again. An agreement was reached on May 26, 1958, effective that date.

On May 9, 1958, the Union filed a grievance demanding two days' pay for the employees who were affected by the closing down of the plant on May 5 and May 6. On May 19, 1958, the Union filed another grievance in behalf of employee Charles Mason, which concerned the seniority rights of Mason to work on May 15, 1958. The employer refused to process or recognize these grievances on the ground that there was no contract in effect from midnight May 2, 1958, until May 26, 1958, during which period of time the alleged grievances occurred. On June 11 the Union again filed a grievance demanding that the employer comply with the contract provisions relative to grievances.

On September 4, 1958, the Union filed the present action alleging that the employer had refused to recognize the grievances or to follow the grievance procedure set forth in the collective bargaining agreement and asked for an order directing that arbitration proceed in the manner provided for in the written agreement. The District Judge ruled that the plaintiff was entitled to judgment as a matter of law, and ordered and decreed that the plaintiff's motion for summary judgment be sustained and that the parties proceed to arbitration. This appeal followed.

The order was not supported by any Memorandum or Opinion giving reasons for the conclusion reached or by the citation of any authorities upon which the District Judge relied, which would have been helpful on this appeal. B. & O. R. Co. v. United States, 279 U.S. 781, 787, 49 S.Ct. 492, 73 L.Ed. 954; Cleveland, C., C. & St. L. R. Co. v. United States, 275 U.S. 404, 414, 48 S.Ct. 189, 72 L.Ed. 338.

The basic issue in this controversy is whether there was a collective bargaining agreement in force and effect on May 5, 6, and 15, on which days the alleged grievances occurred. If the agreement terminated according to its terms on May 3 and was not kept alive thereafter by reason of the negotiations between the parties, the no lock-out obligation on the part of the employer and its obligation to arbitrate the alleged grievance ceased to exist at the same time. Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 312 F.2d 181, 184, 186, C.A. 2nd; Paterson Parchment Paper Co. v. International Brotherhood, etc., 191 F.2d 252, C.A. 3rd, cert. denied, 342 U.S. 933, 72 S.Ct. 376, 96 L.Ed. 694, rehearing denied, 342 U.S. 956, 72 S.Ct. 625, 96 L.Ed. 710; Food Handlers Local v. Arkansas Poultry Corp., Inc., 199 F.Supp. 895, W.D. Ark. See: United States Steel Corporation v. Nichols, 229 F.2d 396, 399, 56 A.L.R.2d 980, C.A. 6th, cert. denied, 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474. Appellant contends that under the fore-

going facts, negotiations for a new bargaining agreement reached an impasse and were discontinued on May 2, 1958, and that the bargaining agreement expired according to its terms on May 3, 1958. Appellee contends that negotiations were not discontinued or abandoned and that the contract continued in effect after the termination date, according to the provisions thereof, by reason of the continuing negotiations between the parties.

Appellant argues on this appeal that the affidavits show without question that this is a factual issue about which the parties are in dispute and that the District Judge was in error in deciding this factual issue in favor of the appellee on its motion for summary judgment. Rule 56(c), Rules of Civil Procedure; McHenry v. Ford Motor Co., 269 F.2d 18, 22, C.A. 6th.

Appellee contends that the District Judge did not decide this factual issue, but that the ruling is based upon the conclusion of the District Judge that, conceding that this factual issue may exist, the collective bargaining agreement required as a matter of law that such issue be decided by the arbitrator instead of by the Court. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

■ We agree with appellant's contention that a factual issue is involved in the disposition of this case and that it would be error if the District Judge resolved that factual issue in a summary judgment proceeding. However, we will proceed upon the assumption that the factual issue was not resolved by the District Judge, as contended by the appellee, and that the ruling was based upon the conclusion that, as a matter of law, the appellee was entitled to have this issue concerning the existence of the contract, as well as the issues involving grievances, decided by the arbitrator instead of by the Court.

■ It is now settled law that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. 574, 582, 80 S.Ct. 1347; Drake Bakeries, Inc. v. Local 50, etc., 370 U.S. 254, 256, 82 S.Ct. 1346, 8 L. Ed.2d 474; Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462. In the Atkinson case, the Supreme Court said, "Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties."

■ In accordance with the foregoing rule, appellee's right to arbitrate the claimed grievances in the present case depends upon the existence of a contract so providing. Whether such a contract exists is a question, which, in our opinion under the authorities above cited, must be decided by the Court before any authority is conferred upon the arbitrator. Clearly, this is the rule in a case where the challenge is directed to the validity of the contract in its inception, and no question of the renewal or extension of the contract is involved.

We are of the opinion that the basic question is not changed by the fact that the question of the existence of the contract at the time when the grievances occurred depends upon facts occurring subsequent to the original execution of the contract instead of upon facts existing at the time of the execution of the contract. In either case the same legal question is presented, namely, whether at the time of the claimed grievances there was a valid bargaining agreement in existence, which existence is necessary in order for an employee or the Union to compel arbitration. Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., supra, 312 F.2d 181, 184, 186, C.A. 2nd; Paterson Parchment Paper Co. v. International Brotherhood, etc., supra,

191 F.2d 252, C.A. 3rd, cert. denied, 342 U.S. 933, 72 S.Ct. 376, 96 L.Ed. 694, rehearing denied, 342 U.S. 956, 72 S.Ct. 625, 96 L.Ed. 710.

But appellee contends that once the validity of the original contract is upheld by the Court, the question of its continued existence after the expiration date provided by the contract itself, by reason of other provisions in the contract providing for an extension under certain circumstances, is no longer one for the Court, and if the parties are in disagreement about its continued existence it becomes a "controversy" which under the provisions of the original contract is an arbitrable issue.

We do not agree with this construction of the contract. Article VII, under which arbitration is claimed, provides the procedure to be followed "If an employee shall have a grievance against the employer." This procedure consists of four steps, followed by the provision in Step 5, "If any grievance or other controversy is not satisfactorily adjusted *as provided in Step 4*, it may be submitted to arbitration at the election of either party." (Emphasis added.) We construe this to apply to employee grievances and controversies with the Company over claimed violations of rights provided by the bargaining agreement, not to a controversy between the Union itself and the Company over the termination or continued existence after the termination date of the bargaining agreement. Step 5 specifically refers to unsettled grievances or other controversies under Step 4. Step 4 is a continuation of the procedure initially provided by Step 1, which is expressly limited to the situation "If an employee shall have a *grievance* against the employer." (Emphasis added.) The issue in the present case is not the disposition of a grievance by an employee against the employer, and, in our opinion, is not subject to the arbitration provisions of Article VII, Step 5, of the bargaining agreement. Atkinson v. Sinclair Refining Co., supra, 370 U.S. 238, 243, 82 S.Ct. 1318.

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with the views expressed herein.