**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 1102, AFL-CIO, Plaintiff,**

v.

**WADSWORTH ELECTRIC MANUFAC-TURING COMPANY, Defendant.**

No. 1103.

United States District Court
E. D. Kentucky,
Covington Division.

March 22, 1965.

Robert A. Wilson, Cincinnati, Ohio., Richard S. Nelson, Covington, Ky., for plaintiff.

Philip J. Kennedy, Cincinnati, Ohio, C. Gordon Walker, Covington, Ky., for defendant.

SWINFORD, Chief Judge.

In this action the plaintiff, a labor union, is seeking to require the defendant, with which it has a bargaining agreement, to submit to arbitration questions which have arisen between the defendant and the plaintiff as to the meaning and application of their agreement.

By agreement of the parties all the evidence in this case is contained in a stipulation and the affidavits of individual officers in the organizations of the respective litigants.

The plaintiff and defendant were parties to a labor agreement which expired on December 16, 1962. Proper notices were given in accordance with the terms of the agreement. Negotiations regarding changes in the contract were carried on until June 6, 1963, on

which date an agreement was reached between the parties to cover a period of two years from February 16, 1963. This agreement was formally executed on June 19, 1963, and related to grievance procedure and arbitration as in the former contract.

On February 8, 1963 the union submitted a grievance as to the discharge of one Melton, an employee in the collective bargaining unit represented by the plaintiff, by the company. Melton had been discharged on that date because of physical incapacity. The grievance was rejected by the company for the reason that on February 8, 1963 there was no agreement between the company and the union. However, during negotiations by the United States Federal Mediation and Conciliation Service, the defendant company agreed to accept the grievance but on February 27 rejected the grievance on its merits. It later refused the plaintiff's request to submit the issue to arbitration.

It is stipulated that the testimony of Anthony Bucella, a representative of the union, and John C. Kuhlman, executive vice-president of the company, may be considered by the court as to certain matters which the parties were unable to resolve by stipulation. The statements of these men pertain to discussions had between them during the time between the expiration of the contract in December 1962 and the agreement of June 1963 and were in relation to the arbitration of the grievance resulting in the discharge of Melton. It is contended by the plaintiff that there was a commitment on the part of the company through Mr. Kuhlman, to the arbitration and that that was a circumstance which was considered in reaching the agreement evidenced by the contract of June 19, 1963. Mr. Kuhlman denies the statements of Mr. Bucella and states that the only commitment which he made with reference to Melton was at a time when the employees were out on strike and he was negotiating with Mr. Bucella to get the employees back to work. He stated that if that were done he would "arbitrate Melton." The offer was rejected and the Melton matter was considered closed.

Since, in the later executed agreement, no mention was made of the Melton case, the court must conclude that it was considered as closed by all parties.

The issue to be determined is whether or not in the absence of a contract the company can be required to submit a grievance to arbitration. This case is one of law and presents a question which has been directly passed upon by the United States Court of Appeals for the Sixth Circuit in Local Union No. 998, Etc. v. B. & T. Metals Co., 315 F.2d 432 (1963). As pointed out in the opinion by Judge Miller, it is settled law that arbitration is solely a matter of contract and neither party can be required to submit to arbitration any question which he has not agreed to submit.

The first consideration in determining the issue presented in the case at bar is whether at the time of the claimed grievance there was a valid bargaining agreement in existence. The right to arbitrate the claimed grievance of Melton depends entirely upon a contract so providing. Proctor & Gamble Ind. U. of Port Ivory v. Proctor & Gamble Mfg. Co., 2 Cir., 312 F.2d 181. The following pertinent language is quoted from the opinion:

"The duty to arbitrate is wholly contractual and the courts have the obligation to determine whether there is a contract imposing such a duty.

" 'The Congress * * * has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

" * * * It is perfectly natural and entirely customary that, in the short

hiatus which is expected to occur between the expiration of one collective agreement and the negotiation of the next, no great change will be made in the existing conditions. Sometimes, as here, a part of the hiatus is covered by an agreed-upon extension of the terms of the expiring agreement. Where no such extension is negotiated, or where the period of the extension has also expired, there is no ground whatever for considering that the old agreement still governs the relationship of the parties." (Numerous authorities cited)

It is clear from the record that no agreement existed between the parties between December 16, 1962 and February 16, 1963, and, consequently, on the date of Melton's discharge there was no contract.

The plaintiff relies on the case of John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898. In that case the court upheld arbitration on the ground that the merger of two companies, one of which was under a labor union and management agreement providing for arbitration, placed all employees of the merged companies under the terms of the contract. It is thus seen that there was in effect at the time the grievance arose a contract in existence. The court in the opinion in the Wiley case took occasion, however, to say that "the duty to arbitrate * * * must be founded on a contract" and, further in the opinion, "this case cannot readily be assimilated to the category of those in which there is no contract whatever * * *".

In Genesco, Inc. v. Joint Council 13, United Shoe Wkrs. of Amer., D.C., 230 F.Supp. 923, decided on May 8, 1964 after Wiley & Sons was decided on March 30, 1964, in dismissing several causes of action, the court said: "There can be no liability for the violation of a collective bargaining agreement in the absence of an agreement."

It is the opinion of the court that since there was no contract and therefore no agreement to arbitrate at the time the grievance arose that the plaintiff is not entitled to arbitration for the alleged grievance and the complaint should be dismissed at the cost of the plaintiff.

The attorneys for the defendant will submit findings of fact, conclusions of law and judgment in conformity with this memorandum.