**LANE, Ltd., Plaintiff-Appellee,**

v.

**LARUS & BROTHER COMPANY, Incorporated, Defendant-Appellant.**

**No. 254, Docket 24366.**

United States Court of Appeals
Second Circuit.

Argued Feb. 14, 1957.

Decided April 5, 1957.

DeWitt, Nast & Diskin, New York City (Macdonald DeWitt, C. Coudert Nast, New York City, M. Wallace Moncure, Jr., Richmond, Va., and Thomas A. Diskin, New York City, of counsel, on the brief), for defendant-appellant.

Nathan A. Markowitz, New York City, for plaintiff-appellee.

Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

The issue before us is whether the defendant's responses to the plaintiff's demands for arbitration constituted such a repudiation of the defendant's obligation as to amount to a "default in proceeding with * * * arbitration." We hold that there was such a repudiation and affirm the district court on all issues.

Lane, Ltd., a New York corporation, had developed certain processes for the manufacture of low nicotine content tobacco and owned all trade-marks and other exclusive rights to Lords Cigarettes and Lords Smoking Tobacco. On March 31, 1952, Lane licensed to Larus & Brother Company, Incorporated, a Virginia corporation, the processes and other exclusive rights to Lords Cigarettes and Lords Smoking Tobacco from June 1, 1952 through June 1, 1957; Larus agreed to market these products and to pay certain royalties on the sales. The agreement contained an arbitration clause which provided that:

> "Should any differences arise between the parties relative to the interpretation of this agreement, or the rights of either of the parties hereunder, it is agreed that such differences and rights shall be determined by arbitration * * *"

By April 1955 differences between the parties had developed as to whether Larus was fully exploiting the products. Lane indicated a willingness to cancel the license for a consideration, but Larus refused. On May 3, 1955 Lane demanded arbitration of the following issues:

1. "Damages of $300,000.00 suffered by it by reason of the willful failure on your part to perform fair-

ly and in good faith, reasonable efforts to diligently advertise, sell, exploit and otherwise promote the sales of Lords Cigarettes and Lords Smoking Tobacco, during the period of the said agreement between the parties."

2. "Damages suffered by it for the destruction of the rights of Lane, Ltd. in Lords Cigarettes and Lords Smoking Tobacco, the value of which was fixed at the sum of $500,000.00 under paragraph 4(d) of the agreement referred to."

Although in its reply of May 20, Larus said it was ready and named an arbitrator, it expressed unwillingness to submit the two issues as set forth in Lane's demand, stating:

" * * * we do not consider either of these questions the proper subject of arbitration under the terms of the agreement, particularly clause 9, thereof.[1] * * *"

Lane's counsel answered on May 27, and refused to permit Larus "to deprive it [Lane] of its right to demand damages," since "the arbitration clause does not limit the issues to be arbitrated and is broad in scope." If necessary, Lane's letter concluded, it would withdraw the damages issue from arbitration and litigate the question.

On June 6, 1955, Larus' attorney reiterated his position, stating:

"I am absolutely unwilling to arbitrate the questions of damages as presented as there definitely is no provision in the contract so providing * * * The complaint of your client * * * that Larus & Brother, Incorporated, failed to advertise, sell, exploit and otherwise promote the sale of Lords Cigarettes and Lords Smoking Tobacco as required of it in the agreement * * * will, of course, be the proper subject of arbitration."

On June 8, Lane's counsel tried once again to persuade Larus to arbitrate the damage issues. He argued that an arbitration decision that Larus had

" * * * 'failed to advertise, sell, exploit and otherwise promote the sale of Lords Cigarettes and Lords Smoking Tobacco as required of it in the agreement' * * * would be an empty victory without a corresponding award of compensatory damages. It would be an inconclusive award which I believe is unenforceable in any jurisdiction."

Larus did not reply to this letter of June 8 nor to Lane's follow-up letter of June 21. Receiving no replies, Lane filed a complaint in the United States District Court for the Southern District of New York on July 1, 1955, in which it alleged that Larus had breached its obligation to perform the agreement and exploit the products in good faith and asked damages of $300,000 for lost royalties and $500,-000 for loss of the value of the trade name.

Larus moved under § 3 of the Federal Arbitration Act, 9 U.S.C.A. § 3, for a stay of the suit pending arbitration, and pleaded the arbitration clause in the agreement as an affirmative defense. Judge Dimock found that Larus' refusal to arbitrate the issues as stated constituted "an express and intransigent repudiation of the obligation to arbitrate, acted upon by the opposite party" and held that Larus was in default within the meaning of § 3, which authorizes a stay for arbitration "providing the applicant for the stay is not in default in proceeding with such arbitration." He therefore denied the stay and struck the defense.

Larus' basic argument is that it was always willing to arbitrate the issue of damages as well as all other issues, but the question as presented "presumed breach of contract and damages," and it would not go to arbitration conceding this.

On the record before us, it is clear that this argument is unacceptable. The

[1] Clause 9 provides: "Licensee shall have the sole and exclusive right to determine its sales and marketing programs and policies with respect to its operation under this license agreement * * *"

questions in the arbitration demand clearly indicate that the existence of both breach and damages was to be decided by the arbitrators, and agreeing to arbitrate these questions would not involve any concession by Larus that there had been a breach.

Moreover, at no time did Larus make this objection to Lane or suggest that the questions be phrased otherwise. Rather, the correspondence discloses only a claim by Larus that the issue of damages was outside the scope of the arbitration clause because of clause 9 of the agreement, quoted at page 1059, note 1, supra, and in this Larus was clearly wrong since the arbitration clause, by its terms, covered all disputes between the parties.

The district court was therefore correct in holding that by refusing to arbitrate the precise questions involved in this suit, Larus had forfeited its own right to arbitrate. A party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced. Cf. Radiator Specialty Co. v. Cannon Mills, 4 Cir., 1938, 97 F. 2d 318, 117 A.L.R. 299.

We therefore hold that Larus' unjustified refusal to arbitrate liability and damages was sufficient to constitute such a repudiation of the obligation to arbitrate as to amount to a waiver of the correlative right to arbitrate.

In a companion appeal, Larus raised some questions as to certain procedural aspects of Judge Dimock's striking of their defense of arbitration. Since we affirm his denial of the motion on the merits, we also affirm his striking the defense on the same grounds and a discussion of the procedural aspects is unnecessary.

Affirmed.