**FARR WHITLOCK DIXON & CO., Inc., Libelant,**

v.

**S.S. GENERAL TSAKALOTOS, her engines, boilers, etc. and Chatham Shipping Co., etc., Respondents.**

United States District Court
S. D. New York.
Aug. 10, 1965.

Baker, Nelson, Williams & Mitchell, New York City, for libelant, Robert M. Makla, New York City, of counsel.

Poles, Tublin & Patestides, New York City, for respondents, Christ Stratakis, New York City, of counsel.

WYATT, District Judge.

This is a motion by respondents under 9 U.S.C. §§ 3 and 4 for an order (1) staying all further proceedings in the present action and (2) directing that arbitration proceed as provided in an agreement between the parties.

On September 7, 1962 libelant Farr Whitlock Dixon & Co., Inc. ("Farr") entered into a charter party with respondent Chatham as owner of the respondent vessel, the "General Tsakalo-tos". The two respondents will be referred to (or either one of them) simply as the "owner". The charter party contains an arbitration clause.

During the course of the performance of the agreement, certain disputes arose between the parties; each party claimed a sum from the other.

On December 19, 1962, the owner sought arbitration of its claim and appointed its arbitrator. Shortly thereafter, Farr appointed its arbitrator and the two arbitrators on February 11, 1963 selected John M. Reynolds as the third arbitrator, thus completing the panel.

The agreement for arbitration contemplated that the same panel of arbitrators would determine *all* claims between the parties to the charter agreement, provided notice of such claims was given before "the arbitrators finally close the hearings". The relevant provision of the charter party in this respect was as follows:

"Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and the other party to specify further disputes or differences under this Charter for hearing and determination."

It will be seen from this that the same panel was to hear all claims, and not merely the claim of the party first demanding arbitration.

After the panel was constituted on February 11, 1963, nothing happened for some time. On the present record, there is no indication as to which party, if either, was to blame for inaction.

In any event, under date of May 4, 1964, Farr wrote to the owner, referred to the pending arbitration, inquired if the owner was "ready to proceed with the arbitration", and notified the owner that it (Farr) intended to submit "to the arbitration panel" a claim by it against the owner (which claim was sufficiently described and was stated to have been documented to the broker on August 9, 1963). Under the arbitra-

tion clause, there is no doubt but that Farr had a right on May 4, 1964 to have its claim arbitrated by the panel of arbitrators as then constituted. Technically, Farr did not comply with the letter of the arbitration clause since it apparently gave no notice of its claims to the arbitrators, but it complied with the substance of the clause since it gave notice to the party in interest, the owner.

The record does not contain any reply by the owner. Instead, after waiting several months, the owner notified the arbitrators that it had "decided to drop the case".

The arbitrators under date of September 4, 1964, so advised the parties and requested that each send a check for $25 to the Society of Maritime Arbitrators. The significance of this is not made clear but seems to indicate that the arbitrators felt their function to have been ended. Technically, however, the arbitrators did not "finally close the hearings" and thus did not technically end the right of Farr to have *them* determine its claim. In substance, the arbitrators did "finally close the hearings".

It appears, however, that the letter of the arbitrators of September 4, 1964, was written "under the misapprehension that the * * * arbitration had been dropped with the consent of *both* parties". (Letter, Reynolds to Stam, Oct. 7, 1964; emphasis supplied).

After receiving the notice from the arbitrators—sent under the "misapprehension" just stated—Farr under date of October 6, 1964 notified the arbitrators of its claim and that it did not consent to "dropping the case".

The owner apparently succeeded in convincing the arbitrators that the arbitration panel could not be convened. The efforts of Farr were not successful and on December 2, 1964 Farr sent its check for $25 to the Society of Maritime Arbitrators.

As late as October 7, 1964 and after receiving notice of Farr's claim, the third arbitrator (Mr. Reynolds) was of the opinion that "this arbitration is still very much alive". The failure of the arbitrators to convene as a panel after October 7, 1964—whether technically correct or not—seems of doubtful wisdom. In any event, their failure was due to the attitude of the owner; having knowledge of the claim of Farr for several months and of Farr's desire to arbitrate, the attitude of the owner can only be regarded as inexcusable.

It should be noted that the amount of Farr's claim ($3,233.27) substantially exceeded that of the owner ($1,230), a circumstance which may explain the owner's attitude.

██ Under the circumstances set forth, the owner has waived its right to arbitration and is "in default in proceeding with * * * arbitration" (9 U.S.C. § 3).

The principle here applicable is that laid down by our Court of Appeals in these words (Lane, Ltd. v. Larus & Brother Co., 243 F.2d 364, 367; 2d Cir. 1957):

> "A party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced."

To the knowledge of the owner, Farr was ready, able and willing to arbitrate its claim and arbitrators were standing by to hear it. The attitude of the owner defeated Farr's effort to arbitrate. Now, many months later and after Farr was obliged to bring a suit here, the owner ought not in fairness be able to shift position and force arbitration on Farr.

The motion is in all respects denied.

So ordered.