DRAKE BAKERIES INCORPORATED v. LOCAL 50,
AMERICAN BAKERY & CONFECTIONERY
WORKERS INTERNATIONAL,
AFL–CIO, ET AL.

No. 598.   Argued April 18, 1962.—Decided June 18, 1962.

*Robert Abelow* argued the cause for petitioner. With him on the briefs were *Horace S. Manges* and *Marshall C. Berger.*

*Howard N. Meyer* argued the cause for respondents. With him on the briefs was *Paul O'Dwyer.*

*Edward Maguire* filed a brief for the New York State AFL–CIO, as *amicus curiae,* urging affirmance.

MR. JUSTICE WHITE delivered the opinion of the Court.

The petitioning company brought this action for damages in the District Court under § 301 (a) of the Taft-Hartley Act, alleging that the respondent union had violated the no-strike clause of the collective bargaining contract between the union and the company. The sole question in the case is whether the District Court was correct in holding that the employer's claim was an arbitrable matter under the contract and in ordering a stay of the action pending completion of arbitration. The Court of Appeals for the Second Circuit affirmed the judgment of the District Court by an equally divided vote.[1] This Court granted certiorari (368 U. S. 975), and set the cause for argument immediately following *Atkinson* v. *Sinclair Refining Co., ante,* p. 238, decided this day.

---

[1] The Court of Appeals originally heard the appeal before a three-judge panel, which reversed the judgment below (287 F. 2d 155). But rehearing was ordered before the active judges of the court, who divided 3–3 on the merits, and by a 4–2 vote withdrew the panel decision and affirmed the judgment below (294 F. 2d 399). The propriety of this procedure was questioned in the petition for certiorari, but later petitioner abandoned the question.

256

The company's business is baking and selling cakes and other bakery products. On December 16, 1959, the company notified the union and its employees that because Christmas and New Year's would fall on Fridays and because it was desirable to have fresh bakery products to sell on the Mondays following the holidays, employees would not work on the Thursdays before Christmas and New Year's but would work on the Saturdays following those holidays. Meetings between the union and the company on December 18 and December 22 ensued, the company's position being that it was exercising management's prerogative in rescheduling work, the union's that the proposed work schedule violated the collective bargaining contract and that the employees were not obligated to work on December 26 or January 2. A compromise arrangement was worked out for December 26, and 80 out of 190 employees reported on that day, a sufficient number to allow production to proceed. Further conversations on December 28 were not fruitful, however, and on Saturday, January 2, the company was unable to produce its goods because only 26 employees reported for work. The company promptly filed this damage action on January 4, 1960, alleging that the union instigated and encouraged its members to strike or not to report for work on January 2, all in violation of the no-strike clause contained in the collective bargaining contract. No answer has been filed by the union but the union's affidavit in support of the motion for stay stated what its answer would contain and specifically denied that the union had instigated a strike or encouraged its members not to work on January 2.

As was true in *Atkinson, supra,* the issue of arbitrability is a question for the courts and is to be determined by the contract entered into by the parties. ". . . [A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steel-*

*workers* v. *Warrior & Gulf Nav. Co.,* 363 U. S. 574, 582. But the contract here is much different from the agreement in *Atkinson.* Under Article V [2] of the contract: "The parties agree that they will promptly attempt to adjust all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly."

This is broad language, indeed, and the procedure thereafter provided in Article V does not, as it did in *Atkinson,* exclude claims or complaints of the employer. It is provided that in the first instance the union will be represented by a committee and the shop chairman, and the employer by the shop manager. Failing adjustment at this stage, the issue is required to be submitted in writing by "the party claiming to be aggrieved to the other party,"

---

[2] "Article V—Grievance Procedure

"(a) The parties agree that they will promptly attempt to adjust all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly.

"In the adjustment of such matters the Union shall be represented in the first instance by the duly designated committee and the Shop Chairman and the Employer shall be represented by the Shop Management. It is agreed that in the handling of grievances there shall be no interference with the conduct of the business.

"(b) If the Committee and the Shop Management are unable to effect an adjustment, then the issue involved shall be submitted in writing by the party claiming to be aggrieved to the other party. The matter shall then be taken up for adjustment between the Union and the Plant Manager or other representative designated by management for the purpose. If no mutually satisfactory adjustment is reached by this means, or in any event within seven (7) days after the submission of the issue in writing as provided above, then either party shall have the right to refer the matter to arbitration as herein provided."

whereupon the union and the plant manager are to attempt to reach a satisfactory agreement. If agreement is not reached within seven days from the time the issue is submitted in writing, either party "shall have the right to refer the matter to arbitration . . . ."

Article V does not stop with disputes "involving questions of interpretation or application of any clause or matter" covered by the contract. The adjustment and arbitration procedures are to apply to all complaints, all disputes and all grievances involving any act of either party, or any conduct of either party, or any relation between the parties, directly or indirectly. The company asserts that there was a strike by the union in violation of the no-strike clause. It therefore has a "complaint" against the union concerning the "acts" or "conduct" of the union. There is also involved a "dispute" between the union and the company, for the union denies that there was a strike at all, denies that it precipitated any strike, denies that the employees were obligated under the contract to work on that January 2, and itself claims that the employer breached the contract in scheduling work for the holidays.[3] Article V on its face easily reaches the employer's claim against the union for damages caused by an alleged strike in violation of the contract.

The company earnestly contends that the parties cannot have intended to arbitrate so fundamental a matter as a union strike in breach of contract, and that only an

---

[3] Immediately before the Christmas weekend in 1959, petitioner and respondent exchanged telegrams, in the course of which exchange respondent charged:

"We have informed you that we did not agree with, or accept your proposal to amend or alter past practice concerning holiday weekends. Your proposed schedule and your threats of disciplinary penalties violates contract and practice . . . . If you do not retract position we shall demand arbitration."

express inclusion of a damage claim by the employer would suffice to require arbitration. But it appears more reasonable to us to expect such a matter, if it is indeed so fundamental and so basic to the company under the contract, to have been excluded from the comprehensive language of Article V if the parties so intended. In Article VII,[4] which contains the no-strike provisions, the parties prohibited strikes, insulated the union, its officers and members from damages for strikes which the union did not authorize, and agreed that, even in the case of unauthorized strikes, the company would arbitrate disciplinary action taken against the strikers. In the face

---

[4] "Article VII—No Strikes

"(a) There shall be no strike, boycott, interruption of work, stoppage, temporary walk-out or lock-out for any reason during the terms of this contract except that if either party shall fail to abide by the decision of the Arbitrator, after receipt of such decision, under Article 6 of this contract, then the other party shall not be bound by this provision.

"(b) The parties agree as part of the consideration of this agreement that neither the International Union, the Local Union, or any of its officers, agents or members, shall be liable for damages for unauthorized stoppage, strikes, intentional slowdowns or suspensions of work if:

"(a) The Union gives written notice to the Company within twenty-four (24) hours of such action, copies of which shall be posted immediately by the Union on the bulletin board that it has not authorized the stoppage, strike, slowdown or suspension of work, and

"(b) if the Union further cooperates with the Company in getting the employees to return and remain at work.

"It is recognized that the Company has the right to take disciplinary action, including discharge, against any employee who engages in any unauthorized strike or work stoppage, subject to the Union's right to submit to arbitration in accordance with the agreement the question of whether or not the employee did engage in any unauthorized strike or work stoppage."

of the comprehensive language of Article V, it would have been most appropriate at this point for the parties to have excluded from the arbitration procedures the company's claim for strike damages, if they had intended to do so. Instead, the inclusive coverage of Article V was left intact.

Of significance also are certain events which occurred in August 1959. At that time the company took issue with union conduct in connection with overtime work. Labeling this conduct an "overtime strike" and a "breach of contract," the company wrote a letter to the State Mediation Board of New York saying that the contract with the union provided for arbitration of disputes before an arbitrator appointed by the Board and requesting the appointment of an arbitrator to "determine the question of breach of contract and damages suffered by" the company as a result of the strike. An award of damages against the union was requested, as was injunctive relief against a continuance of the overtime strike.[5] It would appear, then, that the company, just four months earlier in 1959, considered that the fundamental matter of a union-led strike was a dispute to be arbitrated under the provisions of the contract.[6]

The company further asserts that even if it agreed in the contract to arbitrate union violations of the no-strike clause, it is excused by the union's breach from pursuing the post-breach remedies called for in the contract. The

---

[5] Apparently the employer's thought was that the federal law should borrow the New York rule which is that an arbitrator may award relief in the nature of an injunction, enforceable in the courts regardless of the New York statute similar to the Norris-LaGuardia Act. *Ruppert* v. *Egelhofer*, 3 N. Y. 2d 576, 148 N. E. 2d 129.

[6] The union opposed arbitration of this dispute, claiming that there was no arbitrable controversy as to the claimed existence of an obligation to work overtime. The parties settled the controversy without conclusive determination of the arbitrability dispute.

company does not deny that grievance and arbitration procedures under this contract—as is true generally (*United Steelworkers* v. *Warrior & Gulf Nav. Co.,* 363 U. S. 574, 584)—contemplate as a matter of course the arbitration of many alleged breaches of contract. Indeed, central to the company's position is its assertion that the union was bound to arbitrate, rather than strike over, its claim that the company breached the contract by scheduling Saturday work. But in its view, the union's violation of the no-strike clause is *sui generis* and so basic to what the employer bargained for in the contract and so inherently and "fundamentally inconsistent with" the grievance and arbitration procedures that the faithful observance of the no-strike clause by the union is a condition precedent to the employer's duty to arbitrate (even though he has promised to do so), or that the union must be deemed to have waived, or to be estopped from asserting, its right to arbitrate.

However, this Court has prescribed no such inflexible rule rigidly linking no-strike and arbitration clauses of every collective bargaining contract in every situation.[7] The company has not attempted, or claimed the right, either to terminate the entire contract or to extinguish permanently its obligations under the arbitration provisions. Instead, it has sued for damages for an alleged strike and, as far as this record reveals, the contract continued in effect, as did the promises of the parties to arbitrate and the promise of the union not to strike. Moreover, in this

---

[7] We do not understand the opinions in *Textile Workers Union* v. *Lincoln Mills,* 353 U. S. 448, 455, or *United Steelworkers* v. *American Mfg. Co.,* 363 U. S. 564, 567, to enunciate a flat and general rule that these two clauses are properly to be regarded as exact counterweights in every industrial setting, or to justify either party to the contract in wrenching them from their context in the collective agreement on the ground that they are mutually dependent covenants which are severable from the other promises between the parties.

262

case, under this contract, by agreeing to arbitrate all claims without excluding the case where the union struck over an arbitrable matter, the parties have negatived any intention to condition the duty to arbitrate upon the absence of strikes. They have thus cut the ground from under the argument that an alleged strike, automatically and regardless of the circumstances, is such a breach or repudiation of the arbitration clause by the union that the company is excused from arbitrating, upon theories of waiver, estoppel, or otherwise.[8] Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach;[9] and in determining whether one party has so repudiated his promise to arbitrate that the other party is excused the circumstances of the claimed repudia-

---

[8] In *Local 174* v. *Lucas Flour Co.*, 369 U. S. 95, 105–106, it was held that a clause requiring the parties to submit disputes to final determination by arbitration implied an obligation not to strike over such disputes. Accordingly, the Court upheld an employer's § 301 breach of contract suit against the union for strike damages due to a walkout over an arbitrable dispute. In that case, unlike the present one, the union conceded that there had been a strike over a grievance which the union had agreed to submit to arbitration. The only question in dispute was liability *vel non.* The union did not contend that, and the Court did not consider whether, the employer's damage claim should have been taken to an arbitrator. And, of course, the Court did not consider whether the union's breach of the no-strike clause constituted a repudiation or waiver of arbitration of the damage claim.

[9] See *In re Pahlberg Petition*, 131 F. 2d 968 (C. A. 2d Cir.); *Kulukundis Shipping Co.* v. *Amtorg Trading Corp.*, 126 F. 2d 978 (C. A. 2d Cir.); *Pennsylvania Greyhound Lines* v. *Amalgamated Assn.*, 98 F. Supp. 789 (W. D. Pa.), rev'd on other grounds, 193 F. 2d 327 (C. A. 3d Cir.); *Batter Bldg. Mats. Co.* v. *Kirschner*, 142 Conn. 1, 110 A. 2d 464; *Heyman* v. *Darwins, Ltd.*, [1942] A. C. 356 (H. L.) (disapproving *Jureidini* v. *National Br. & Ir. Ins. Co.*, [1915] A. C. 499, 505 (H. L.)). See also *Shanferoke Coal Corp.* v. *Westchester Serv. Corp.*, 70 F. 2d 297, 299 (C. A. 2d Cir.), aff'd, 293 U. S. 449, 453–454.

tion are critically important.[10]   In this case the union denies having repudiated in any respect its promise to arbitrate, denies that there was a strike, denies that the employees were bound to work on January 2 and asserts that it was the company itself which ignored the adjustment and arbitration provisions by scheduling holiday work.

In passing § 301, Congress was interested in the enforcement of collective bargaining contracts since it would "promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace" (S. Rep. No. 105, 80th Cong., 1st Sess. 17).   It was particularly interested in placing "sanctions behind agreements to arbitrate grievance disputes" (*Textile Workers Union* v. *Lincoln Mills*, 353 U. S. 448, 456).   The preferred method for settling disputes was declared by Congress to be "[f]inal adjustment by a method agreed upon by the parties" (§ 203 (d) of the Act, 29 U. S. C. § 173 (d)). "That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play" (*United Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564, 566).   Under our federal labor policy, therefore, we have every reason to preserve the stabilizing influence of the

----

[10] 6 Corbin, Contracts § 1443 (1961 Supp., n. 34, pp. 192–193) states:

"The effect of a repudiation upon the repudiator's right to arbitration should depend on the character of his so-called 'repudiation' and the reasons given for it.   One who flatly repudiates the provision for arbitration itself should have no right to the stay of a court action brought by the other party.   But mere nonperformance, even though unjustified, is not *per se* a 'repudiation.'   One who asserts in good faith that the facts justify him in refusing performance of other provisions in the contract should not thereby lose his right to arbitration that he would otherwise have had.   There is no inconsistency in his demanding arbitration at the same time that he asserts his legal privilege not to proceed with performance."

collective bargaining contract in a situation such as this. We could enforce only the no-strike clause by refusing a stay in the suit for damages in the District Court. We can enforce both the no-strike clause and the agreement to arbitrate by granting a stay until the claim for damages is arbitrated. This we prefer to do.[11]

Petitioner relies upon decisions by various Courts of Appeals denying stays of damage suits for breach of no-strike clauses for want of arbitrability of the dispute.[12] Most of them, however, involved far more narrowly drawn arbitration clauses than that which is involved here.[13] And in at least two Court of Appeals decisions involving clauses of comparable breadth to that of the instant case, violations of no-strike clauses have been held to be arbi-

---

[11] Cf. *Boone* v. *Eyre,* 1 Bl. H. 273, 126 Eng. Rep. 160 (K. B. 1777) (L. Mansfield): ". . . [W]here mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other. But where they go only to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent." See also *Dermott* v. *Jones,* 23 How. 220, 231.

[12] These cases are collected in the withdrawn decision of the three-judge panel of the Court of Appeals, 287 F. 2d 155, 158 n. 4. See also *Vulcan-Cincinnati, Inc.,* v. *United Steelworkers,* 289 F. 2d 103 (C. A. 6th Cir.).

[13] E. g., *United Furniture Workers* v. *Colonial Hardwood Co.,* 168 F. 2d 33 (C. A. 4th Cir.), where arbitration was limited to employee grievances over wages, hours, or working conditions, as in *Atkinson* v. *Sinclair Refining Co., ante,* p. 238; and *United Automobile Workers* v. *Benton Harbor Indus.,* 242 F. 2d 536 (C. A. 6th Cir.); *Cuneo Press, Inc.,* v. *Kokomo Union,* 235 F. 2d 108 (C. A. 7th Cir.), where arbitration was limited to employee grievances. But see *United E., R. & M. Wkrs.* v. *Miller Metal Prods., Inc.,* 215 F. 2d 221 (C. A. 4th Cir.) ("[a]ll differences, disputes and grievances that may arise between the parties to this contract with respect to the matters covered in this agreement"); *Markel Elec. Prods., Inc.,* v. *United E., R. & M. Wkrs.,* 202 F. 2d 435 (C. A. 2d Cir.) ("differences . . . as to the meaning and application of the provisions of this agreement, or . . . any trouble of any kind . . . in the plant").

trable and suits for damages have been stayed pending arbitration.[14]

This Court held in *Mastro Plastics Corp.* v. *Labor Board*, 350 U. S. 270, that the employer did not have the right to replace employees who had struck over employer unfair labor practices, in the face of an absolute no-strike clause. It was said that, despite the broad prohibition of strikes in the contract, the parties could not have intended to waive the employees' right to strike over a flagrant unfair labor practice, absent an express statement in the contract to that effect. The company urges that *Mastro* precludes the result we have reached in this case. *Mastro*, however, involved a flagrant unfair labor practice by the company threatening the very existence of the union itself. A strike in violation of contract is not *per se* an unfair labor practice [15] and there is no suggestion in this record that the one-day strike involved here was of that nature. We do not decide in this case that in no circumstances would a strike in violation of the no-strike clause contained in this or other contracts entitle the employer to rescind or abandon the entire contract or to declare its promise to arbitrate forever discharged or to refuse to arbitrate its damage claims against the union. We do decide and hold that Article V of this contract obligates the company to arbitrate its claims for damages from forbidden strikes by the union and that there are no circumstances in this record which justify relieving

---

[14] *Signal-Stat Corp.* v. *Local 475*, 235 F. 2d 298 (C. A. 2d Cir.); *Yale & Towne Mfg. Co.* v. *Local 1717*, 299 F. 2d 882 (C. A. 3d Cir.). See *id.,* at 883–884 n. 5, collecting authorities from lower courts. Under New York law, broad arbitration clauses permit arbitrators to award damages. See *In re Publishers Assn.,* 8 N. Y. 2d 414, 171 N. E. 2d 323.

[15] *United Mine Workers* v. *Labor Board*, 103 U. S. App. D. C. 207, 257 F. 2d 211; *Lodge No. 12* v. *Cameron Iron Works, Inc.,* 257 F. 2d 467, 473 (C. A. 5th Cir.); see *Dowd Box Co.* v. *Courtney*, 368 U. S. 502, 513; H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess. 41–42.

the company of its duty to arbitrate the consequences of this one-day strike, intertwined as it is with the union's denials that there was any strike or any breach of contract at all.

If the union did strike in violation of the contract, the company is entitled to its damages; by staying this action, pending arbitration, we have no intention of depriving it of those damages. We simply remit the company to the forum it agreed to use for processing its strike damage claims. That forum, it is true, may be very different from a courtroom,[16] but we are not persuaded that the remedy there will be inadequate. Whether the damages to be awarded by the arbitrator would not normally be expected to serve as an "effective" deterrent to future strikes, which the company urges, is not a question to be answered in the abstract or in general terms. This question, as well as what result will best promote industrial peace, can only be answered in the factual context of particular cases. Here, the union claims it did not call a strike and that the men were not bound to work on January 2, basing its claim upon years of past practice under the contract. The dispute which this record presents appears to us to be one particularly suited for arbitration, if the parties have agreed to arbitrate. We hold that they did so agree and will hold the company to its bargain.

A final matter is the company's suggestion that the union is not entitled to a stay because it has not proceeded with dispatch in seeking arbitration. The District Court held that the union was not in default, and we agree. If the company had a claim for damages, the contract provided for the company's attempting to adjust its claim by consulting with the union. Failing this, either party could take the matter to arbitration. The company's claim arose out of events which occurred on

---

[16] *Bernhardt* v. *Polygraphic Co.*, 350 U. S. 198, 203.

January 2. This case was filed on January 4. This was the first occasion for the union to insist upon its right to arbitrate the employer's claim for damages. This it promptly did by moving for a stay in the District Court.[17] As its conduct shows in a previous situation, the employer was aware of the procedure to be followed.[18] It should have followed it here.

For the foregoing reasons, the judgment affirming the opinion of the District Court was correct, and, on the merits, the panel decision properly withdrawn.

*Affirmed.*

Mr. JUSTICE FRANKFURTER took no part in the consideration or decision of this case.

Mr. JUSTICE HARLAN, dissenting.

The question presented in this case is whether the parties to this collective bargaining agreement intended that a court, rather than an arbitrator, should decide the employer's claim that the union had violated the no-strike clause of the agreement. Whether a strike in breach of contract has occurred and, if so, what damages have been suffered, are matters with respect to which a court of law can hardly be deemed less competent, as an adjudicator, than an arbitrator. There is no special reason to suppose that the parties preferred to submit this kind of a dispute to an arbitrator whose expertise is more likely to be in the area of employees' grievance claims, as in *United Steelworkers* v. *Warrior & Gulf Navigation Co.,* 363 U. S. 574, 580–582; *United Steelworkers* v. *Enterprise Wheel &*

---

[17] Compare *Shanferoke Coal Corp.* v. *Westchester Serv. Corp.,* 70 F. 2d 297, 299 (C. A. 2d Cir., L. Hand, J.), aff'd, 293 U. S. 449, 453–454, with *Lane, Ltd.* v. *Larus & Bro. Co.,* 243 F. 2d 364 (C. A. 2d Cir.).

[18] See text accompanying notes 5–6, *supra*.

*Car Corp.,* 363 U. S. 593, 597–598.   The less so, from the standpoint of the employer, when it is recognized that any damages awarded by an arbitrator would not be self-enforcing.

It would require more persuasive evidence than either this collective agreement or record affords to persuade me that it was contemplated that the employer would forego his statutory remedy under § 301 respecting alleged violations of the no-strike clause of the collective agreement. I would reverse the judgment below substantially for the reasons given in the panel opinion of the Court of Appeals, 287 F. 2d 155.