UNITED GARMENT MANUFACTUR-
ING COMPANY, a corporation,
Plaintiff,

v.

MINNESOTA JOINT BOARD, AMALGA-
MATED CLOTHING WORKERS OF
AMERICA, and the Amalgamated
Clothing Workers of America, Defend-
ants.

No. 4–60 Civ. 303.

United States District Court
D. Minnesota,
Fourth Division.

Aug. 23, 1962.

Clifford D. Reznicek, New York City, and Douglas Hall, of Hall, Hedlund, Juster, Forsberg & Merlin, Minneapolis, Minn., in behalf of defendants in support of said motions.

Joe A. Walters, of O'Connor, Green, Thomas & Walters, Minneapolis, Minn., in behalf of plaintiff in opposition thereto.

NORDBYE, District Judge.

The action was brought by United Garment Manufacturing Company, hereinafter referred to as United Garment, against Minnesota Joint Board, Amalgamated Clothing Workers of America, hereinafter referred to as Joint Board, and Amalgamated Clothing Workers of America, hereinafter referred to as Amalgamated, under Section 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a), for damages arising out of an alleged unlawful strike in alleged breach of the collective bargaining agreement dated May 24, 1957, then existing between the plaintiff and one or both of the defendants. This contract covered plaintiff's operation at Chisholm, Minnesota. Both defendants have moved for summary judgment.

Amalgamated bases its motion on the following grounds: First, that it is not a party to the agreement involved in this action; second, that the agreement dated May 24, 1957, had been terminated prior to the time the alleged breach occurred; third, the Joint Board had a right to call its members out on strike because United Garment had defaulted in its payments to the Retirement and Insurance Fund; and fourth, the agreement executed by the plaintiff at the termination of the strike is in the nature of an accord and satisfaction which completely bars its claim. Joint Board joins Amalgamated in all of the above grounds of the motion except the first, for it admits that it was a party to the agreements. If the summary judgment is denied, then in the alternative both Amalgamated and Joint Board move the Court to stay the action pending arbitration as required by the collective bargaining agreement.

██ The first contention raised by defendant Amalgamated is that it is not a party to the agreements. In considering a motion for summary judgment, the Court should take the view of the evidence most favorable to the party against whom the motion is brought, giving him the benefit of all inferences which may reasonably be drawn from the evidence. Ramsover v. Midland Valley R. Co., 8 Cir., 1943, 135 F.2d 101; Lockie v. Wertheimer Cattle Co., D.C.Minn., 1945, 5 F.R.D. 45. Although the showing made by Amalgamated is persuasive that it is an autonomous International Labor Union and that it never was a party to the agreements in question, the situation presented becomes somewhat confused because of the fact that Sander Genis, who signed the original collective bargaining agreement dated May 24, 1957, is a Vice President of Amalgamated and also manager of the Joint Board. The original collective bargaining agreement is signed "Amalgamated Clothing Workers of America, by Sander Genis, Mgr." The second agreement entered into after the strike, dated October 15, 1959, is also signed "Amalgamated Clo. Workers, Sander Genis, Mgr." The supplemental agreement attached to the agreement of May 24, 1957, was entered into August 1, 1956, between plaintiff and the "Minnesota Joint Board of The Amalgamated Clothing Workers of America by Sander Genis, Mgr." But after the termination of the collective bargaining agreement between the parties, it was Amalgamated which brought suit for sums allegedly due from the plaintiff under the supplemental agreement. Although Amalgamated is probably a creditor beneficiary under this supplemental agreement and thus has the right to recover any sums due thereunder, there may be some support for plaintiff's contention that a reasonable inference may be drawn from the

commencement of the suit to the effect that Amalgamated considered itself a party to the agreement. In addition, there is the admitted showing herein that Amalgamated was a party to the collective bargaining agreement as between plaintiff and the Union in connection with plaintiff's operations at Iron Mountain, Michigan. On this motion for summary judgment, the Court should not deny plaintiff the right to produce any corroborating evidence which may tend, as it contends, to establish that Amalgamated and the Joint Board should be considered as one so far as the Chisholm operations are concerned.

■ The defendants jointly move for summary judgment upon the grounds that the agreement dated May 24, 1957, had been effectively terminated prior to the time it allegedly was breached by the strike. The position of the defendants in this regard gives rise to an interpretation of the contract of May 24, 1957, which, among other things, provided,

"THIS AGREEMENT shall take effect on 24th day of May, 1957, and shall continue up to and including May 31, 1961, and from year to year thereafter, unless sixty (60) days' notice in writing by registered mail from either party to the other be given prior to May 31st of any year of intention to modify or amend this Agreement.

"It is understood and agreed between the parties hereto that if at any time during the term of this Agreement by reason of inflation, deflation, a change in the national wage policy, or other causes which affect the sportswear, outerwear or related industries, either of the parties considers it necessary to modify wages, established under this Agreement, a conference may be requested to discuss such modification by giving sixty (60) days' written notice to the other party prior to the anniversary date."

There is a dispute over the interpretation of the above paragraphs. Plaintiff contends that it obtained a firm four-year contract from May 24, 1957, up to and including May 31, 1961, and from year to year thereafter unless either party gives the required notice of its intention to modify or amend the agreement after May 31, 1961. Under plaintiff's construction, if the parties could not agree upon the requested modification after May 31, 1961, the contract would terminate or possibly arbitration would be invoked as provided in the agreement. Defendants, on the other hand, contend that, upon giving sixty days' written notice prior to any anniversary date beginning with May 31, 1958, either party could give notice to amend or modify the agreement. In addition, defendants take the position that the sixty-day written notice would effectively terminate the contract if the other party did not acquiesce in the proposed modifications or amendments. .

The interpretation of these provisions of the contract, among other considerations, should await the taking of evidence as to the conduct of the parties with reference thereto, and their interpretation thereof during the existence of the contract which may have any bearing thereon. At first blush, it would seem that the initial paragraph quoted above would indicate that there was a firm contract for four years as to all of the conditions of the collective bargaining agreement, but the second paragraph may indicate that the parties did intend to reserve the right to open negotiations regarding wages, etc., by giving sixty days' notice prior to any anniversary date; then if the parties could not agree upon the modification, arbitration would be initiated.

On January 26, 1959, the defendant Joint Board wrote a letter to the plaintiff of proposed modification and amendment of the May 24, 1957, contract. Apparently plaintiff refused to alter or modify the contract as requested, and the defendant Joint Board took the position that the contract was terminated by reason of plaintiff's refusal to accede to the Union's demand. In any event, according to plaintiff, this precipitated the

strike in the Fall of 1959 which is the subject of this action. Defendants admit that they did not seek to invoke arbitration prior to the calling of the strike.

At this posture of the proceeding on a motion for summary judgment, it is difficult to understand how the Union can sustain its action in going out on strike upon the theory that the contract between the parties was terminated and hence it was not bound by the provisions of the contract which forbade strikes, sit-downs and lock-outs during the terms of the agreement. In other words, if the defendant Union is correct that, upon sixty days' notice before any yearly anniversary date, it could reopen negotiations for modification and amendment of the collective bargaining agreement, it would seem that it would be bound to submit the matter to arbitration before striking. Moreover, after the strike a supplemental agreement was entered into and the parties recited that "The parties agree that the agreement now in effect will continue until May 31, 1961." This recital would indicate that the parties recognized that the agreement never had been terminated.

■ The defendants contend, however, that in any event the strike was legally called because plaintiff had defaulted in its payments to the Retirement and Insurance Fund. These payments were required under the supplemental agreement dated August 1, 1956, which was attached to the collective bargaining agreement of May 24, 1957. Article I, Section 5, of the collective bargaining agreement provides,

"The parties to this Agreement agree that there will be no strikes, sit-downs or lock-outs during the term of this Agreement, subject to the provisions of the supplemental agreement as defined in Section 9 of Article I."

Section 9 of Article I states that the supplemental agreement is incorporated into the main collective bargaining agreement, and Paragraph 6(b) of the supplemental agreement provides,

"In the event that the Union receives written notice from one or more of the Trustees, designated by the Trustees for that purpose, that the Employer has failed to pay in full any sum due the Trustees under paragraph 3 and that such failure has continued for five (5) days, the Union may direct its members to discontinue work * * * until all sums due from the employer * * * have been paid in full. The remedy provided for in this subparagraph * * * may be exercised by the Union anything in the Collective Bargaining Agreement to the contrary notwithstanding. * * *"

It is admitted by plaintiff that it had been in default on its payments to the fund more than five days and that this default was in existence at the time the strike was called. However, this right to strike by reason of the employer's failure to make its payments into the Retirement and Insurance Fund is not without limitation. A reading of the supplemental agreement would indicate that this right was to be exercised only to secure compliance by the employer to the terms of the agreement with respect to these payments. In this case, there would appear to be a genuine issue of fact as to whether any right to strike as exercised by the Joint Board was to secure compliance with the supplemental agreement. There is support for plaintiff's contention that the strike was used as a means to modify the main collective bargaining agreement and not to secure the payments in arrears to the Retirement and Insurance Fund. It will be observed that no mention of plaintiff's non-compliance with reference to these payments was made when the memorandum agreement was entered into which settled the strike. Moreover, plaintiff contends that no written notice was received by the Union from one or more of the Trustees that the employer was in arrears. Apparently this fact is not denied by the Union, but defendants contend that such notice was not necessary because Sander Genis was aware of the default in these payments.

Whether this alleged notice fulfills the intent of the contract the Court does not assume at this time to decide.

■ The defendants next contend that the memorandum agreement settling the strike acts as an accord and satisfaction, and thus bars plaintiff's claim. Their position in this regard is patently unsound. Plaintiff agreed to settle the dispute arising out of the Union's demands to modify and amend the contract of May 24, 1957. It was on October 15, 1959, that the parties signed the memorandum agreement which reads as follows:

"Memorandum of agreement between the United Garment Mfg. Co., and the Minnesota Joint Board, Amalgamated Clothing Workers of America and also the Lake O'Woods Mfg. Company, Inc.

1. The parties agree that the agreement now in effect will continue until May 31, 1961.

2. The following settlement is agreed to:

a) Firm agrees to the additional contribution of ½ of 1% to the Health Fund.

b) One (1) additional legal holiday if granted on a National basis in this industry.

c) The general increase of 5% across the board for those who are under the present contract and check-off.

3. The Firm agrees to have the Minnesota Joint Board, Amalgamated Clothing Workers as the bargaining agent for the Lake O'Woods Mfg. Co., a Canvas Department making such as the following products:

a) Sleeping bags

b) Tents

c) Life Preservers

d) Canvas Accessories, camping equipment, et cetera

4. The Firm agrees that after 60 days all workers in this department, except supervisory help, shall join the Union.

5. The Firm agrees to contribute 2½% to the Health Fund of the Amalgamated Clothing Workers to cover all workers in this department as of December 15th, 1959 when the negotiations are concluded between the Firm and the Union.

6. Department seniority to be continued as in the present contract.

UNITED GARMENT MFG. CO.

Edward Maslon
_____

WITNESSED:

Jerry Schwartz

AMALGAMATED CLO. WORKERS

Sander Genis, Mgr.
_____

George Johnson"

It does not appear from this settlement agreement that plaintiff in any manner intended to relinquish its right to bring an action for the alleged breach of the no-strike clause. No reference whatsoever is made to any claim of the plaintiff growing out of the alleged illegal strike. Certainly, on the face of the agreement, defendants' intention as to accord and satisfaction cannot be sustained.

In view of the foregoing, it seems clear that the Court should deny the motions for summary judgment in behalf of the defendants. It is so ordered.

■ In the event the motions for summary judgment are denied, the defendants request that the Court stay proceedings pending arbitration. The provisions regarding arbitration provide in Article I, Section 3,

"If any controversy arises over the interpretation of, or adherence to, any of the provisions of this

Agreement, and if such controversy cannot be determined by the parties hereto, the matter shall be referred to a Board of Arbitration set up as follows: One (1) arbitrator shall be named by the Union; within two (2) days thereafter the Employer shall name an arbitrator, and within (2) days after these two have been named, they shall mutually select a third arbitrator. If they cannot agree upon the third arbitrator within said time, the two arbitrators and if both will not join, either one of them may make application to the Senior Judge of the District Court of the County in which the Employer is located to name such third arbitrator. As soon as the Board of Arbitration is thus constituted, it shall hear, and with all reasonable dispatch, and by their majority vote, finally determine the controversy. The decision of such a Board of Arbitration shall be final and binding upon both parties and shall go into effect as of the date when the dispute was officially taken up with the firm or its representatives."

Section 4 provides,

"When a dispute arises, the matter shall be first taken up between the shop steward and management. If no agreement can be reached, then the dispute shall be taken up between management and a duly authorized Union representative. If no agreement is reached then the matter shall be referred to arbitration as provided in Section 3, Article I."

Admittedly, the recent case of Drake Bakeries v. Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474, affords strong support for defendants' contention that this matter should be relegated to arbitration. However, the provisions as to arbitration in the present controversy are not as broad and all-inclusive as those contained in the Drake case. But, in addition, it seems to this Court that we are confronted with a factual situation that markedly distinguishes this matter from the facts considered in that case. Here, the Union admittedly went out on a strike. In the Drake case, there was presented a fact question as to whether there was a work stoppage on a certain day on the part of the Union, or a mere attempt on the part of the employer to require the workers to report for duty on a day when they were not required under their contract to work. But, more important, the plaintiff here has closed down its operations. It no longer is under any contract with the Union. The Chisholm plant, where the strike occurred, closed down in the Fall of 1959. Likewise, the Iron Mountain plant, where the plaintiff had a contract with Amalgamated, no longer is in operation. The contemplated machinery for arbitration no longer exists. It will be noted from the contract that the initial step in arbitration is consideration of the dispute between the shop steward and the management, and later between management and a duly authorized representative. It is after these preliminary negotiations that arbitration is invoked, if necessary. These provisions, of course, cannot now be carried out. There is no local Union at Chisholm and there is no management there. Presumably, the purpose of arbitration is to avoid unseemly disputes in hotly contested lawsuits whereby the relationship between management and labor may be strained. Under the circumstances which now exist between these parties, there is no industrial harmony to be promoted between them. The collective bargaining agreement between the parties is at an end. If, therefore, in fact the Union is guilty of calling a strike contrary to the provisions of the collective bargaining agreement and hence is amenable to damages, there is no purpose in requiring the parties to adhere to a method of settling their disputes under a contract which no longer exists. That circumstances may arise when management may resort to law for the recovery of damages where an unlawful strike has been called by the Union notwithstanding the arbitration provisions of the contract, seems

evident from the language of the court in the Drake case, wherein it stated, p. 265, 370 U.S., p. 1353, 82 S.Ct.

"* * * We do not decide in this case that in no circumstances would a strike in violation of the no-strike clause contained in this or other contracts entitle the employer to rescind or abandon the entire contract or to declare its promise to arbitrate forever discharged or to refuse to arbitrate its damage claims against the union. We do decide and hold that Article V of this contract obligates the company to arbitrate its claims for damages from forbidden strikes by the union and that there are no circumstances in this record which justify relieving the company of its duty to arbitrate the consequences of this one-day strike, intertwined as it is with the union's denials that there was any strike or any breach of contract at all."

An abandoned contract which exists under the present circumstances would seem to come within the contemplation of the language of the Supreme Court as stated above. There are no provisions in this contract which indicate that the parties intended to arbitrate the question of damages for an unauthorized strike. There is an utter absence of any past conduct by the parties or contract recitals which would suggest that under the circumstances here the parties should be relegated to the medium of arbitration. The controversy involves close questions of contract construction, whether the strike was justified by reason of plaintiff's alleged failure to keep up the payments to the Retirement and Insurance Fund, or whether the strike occurred by reason of defendants' alleged erroneous assumption that the contract had terminated. Certainly, the situation would indicate that a Court is more competent to determine these complex issues than a group of arbitrators.

In view of the foregoing, the Court is constrained to hold that this proceeding should not be stayed pending the outcome of an arbitration, and therefore defendants' motion in that regard is denied. It is so ordered.

Exceptions to the denial of defendants' motions are reserved.