PUERTO RICO LABOR RELATIONS BOARD, Plaintiff and Appellant, *v.* CARIBBEAN CONTAINER CO., Defendant and Appellee.

No. JRT-63-18.        Decided January 9, 1964.

*J. B. Fernández Badillo, Solicitor General, José Orlando Grau,* and *Luis M. Rivera Pérez* for the Labor Relations Board. *Celestino Morales, Jr.,* and *Francisco L. Acevedo Nogueras* for defendant.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Appellee suspended one of its employees from employment and pay for a period of two days. Feeling aggrieved by that disciplinary sanction, the Union submitted the matter to the Grievance Committee pursuant to the terms of the collective agreement. Since the Committee, composed of two representatives of the employer and two of the Union, did not reach an agreement on the matter, the parties requested from the Secretary of Labor the services of an arbitrator to settle the dispute. This was also done pursuant to the

provisions of the agreement. The submission was drawn up in the following terms:

"To determine whether or not the two-day suspension imposed on employee Miguel Charriez was justified under the collective agreement."

The arbitration award was the following:

"The two-day suspension imposed on employee Miguel Charriez was unjustified under the collective agreement and the evidence submitted by the parties."

Based on the result of the arbitration, the employee and the Union demanded the employer to pay to the employee the amount of his salary for the two days of his suspension, which the former refused to do. Thereupon the Union requested that the matter be heard before the Grievance Committee, and again the employer refused. In view of the employer's refusal to appear before the Committee, the Union preferred the charge against the appellee which gave rise to this proceeding accusing the employer of violating the provisions of the collective agreement. The Labor Relations Board filed the corresponding complaint.

The Trial Examiner, Miguel A. Velázquez Rivera, held a public hearing and rendered his report to the Board concluding that in refusing to appear before the Grievance Committee to settle the question of payment of the salary corresponding to the two days in question, appellee violated the collective agreement and engaged in an unfair labor practice, pursuant to § 8 (1) (f) of the Labor Relations Act, 29 L.P.R.A. § 69 (1) (f).[1] The Board subscribed to the determinations of the Trial Examiner, with one exception, and rendered its

---

[1] Section 8 *supra* defines the unfair labor practices in which an employer and a labor organization may engage, and the subdivision cited provides that the violation by an employer of the terms of a collective agreement shall constitute an unfair labor practice.

Decision and Order No. 337 of October 9, 1963.[2] Briefly, the Board ordered the appellee to appear before the Grievance Committee to settle the question on the payment of Charriez' salary.

We have before us a petition of the Board to enforce its order, which petition is based on the employer's refusal to comply with the order.

The appellee assigns the following errors:

1. "The order of the Board is contrary to law, since it erroneously construed the authority of an arbitrator in a specific case such as this."

2. "The order and decision of the Board are contrary to law, since there was an arbitration award which settled the dispute in question and such award is final and unappealable."

The first error assigned was not committed. The authority of the arbitrator is not in dispute here. It was not challenged by either party. On the contrary, both parties accepted it. In its brief discussion of this error the appellee contends that it disagrees with the statement made by the Trial Examiner in the first paragraph of subd. III of his report. The point is academic, since as we already saw (footnote 2) the Board in its decision and order eliminated that paragraph as being unnecessary for the solution of the case.

As to the second error assigned, appellee's position is that the arbitration award is final and unappealable. It is true that the arbitration award is final and unappealable and that a valid arbitration cannot be litigated in the courts, *Rivera* v. *Land Authority*, 83 P.R.R. 251, 257, and 259 (1961); *Labor Relations Board* v. *N.Y. & P.R. S.S. Co.*, 69 P.R.R. 730, 738 (1949), but such assertion does not imply that the error assigned was committed. From a rereading of the terms of the submission and of the arbitrator's award

---

[2] The exception consisted in that the Board eliminated the first paragraph of subd. III of the report of the Trial Examiner which appears at p. 8 of that report (mimeographed).

copied above, it will be seen that the arbitrator decided exactly the question submitted to him. We are considering a valid submission and an award, and the award decided the question raised. No one is appealing from the award.

The question is that as a result of the decision of the arbitrator a new question arose: whether or not Charriez is entitled to receive pay for the two days of his suspension. Obviously, if the decision of the arbitrator as to the suspension had been adverse to Charriez, this second question concerning the pay would not have arisen. However, the decision of the arbitrator was favorable to Charriez. We admit that the question of pay could have been raised in the submission and that it could have been decided by the arbitrator, but it was not. Therefore, the question was not raised and not decided, as it had to be. Whenever the Committee or the arbitrator determines that an employee has been unjustifiedly suspended, does the employer expect the employee to donate to him the salaries which he failed to receive for such unjustified suspension? And again, does the employer perhaps expect the Union to do nothing in view of its refusal to meet with the Grievance Committee? The situation is provided for in the collective agreement which in its Art. XIII, subd. 8, provides that whenever the Grievance Committee decides to order the reinstatement of a laborer who has been dismissed or suspended, such Committee shall have power to order the full or partial payment of the back pay to which the employee may be entitled. As may be seen from the terms of the agreement, the question is clearly one for the Grievance Committee.

In refusing to discuss with the Grievance Committee the right to salaries of an employee who was unjustifiedly suspended, the appellee violated the collective agreement and engaged in an unfair labor practice. Of course, the second error assigned was not committed either.

■ For reasons which we deem to be good, the courts are sanctioning with their decided endorsement the procedure relative to the Grievance Committees and to the arbitration which the parties establish in their collective agreements. See *Pérez* v. *Water Resources Authority*, 87 P.R.R. 110 (1963), and the authorities cited there. See, also, *Labor Relations Board* v. *Caribbean Container Co., ante*, p. 694.

In commenting on the six cases which in his opinion are the most important ones concerning the arbitration of labor-management disputes decided by the Supreme Court of the United States during 1961–62, Leo Weiss, attorney for the National Labor Relations Board, points out in 51 Geo. L.J. 284, 303 (1963) that the keystone of the jurisprudential attitude on the matter consists in making the parties perform as promised in the collective agreements. On that same page and on the following the writer points out that the public policy pronouncements in the field of labor relations made by the Congress, by the President and by the Supreme Court have emphasized that the peaceful settlement of labor disputes, especially settlement by arbitration, is vital to the welfare of the public interest and to be preferred over "economic warfare."[3]

For our part, in *Pérez* v. *Water Resources Authority, supra*, we had already said:

". . . The question involved herein is a matter of public interest. We refer to the labor-management relations, to the collective bargaining and to the arbitration procedures. The public policy expressed by the Legislative Assembly of Puerto Rico in our Labor Relations Act, 29 L.P.R.A. § 62, indicates

---

[3] The six cases commented on by Weiss in that article are the following: *Charles Dowd Box Co.* v. *Courtney*, 368 U.S. 502 (1962); *Local 173, Retail Clerks Ass'n* v. *Lion, Dry Goods Inc.*, 369 U.S. 17 (1962); *Local 174, Teamsters Union* v. *Lucas Flour Co.*, 369 U.S. 95 (1962); *Drake Bakeries, Inc.* v. *Local 50, American Bakeries Workers*, 370 U.S. 254 (1962); *Atkinson* v. *Sinclair Ref. Co.*, 370 U.S. 238 (1962); *Sinclair Ref. Co.* v. *Atkinson*, 370 U.S. 195 (1962).

the necessity of promoting collective bargaining as an efficient instrument to achieve industrial peace. Experience has shown that the labor-management relationship is closely connected with the economy and the general welfare of contemporaneous society. Collective bargaining as well as the grievance and arbitration procedure established thereby are vested with public interest, for they are direct and efficient means to promote industrial peace and stability as well as the most fair distribution of the wealth created by management and labor."

Judgment will be rendered enforcing Order No. 337 of October 9, 1963 issued by the Labor Relations Board, as copied in the Judgment.