**INTER–CONTINENTAL ENGINE SERVICE, INC.**

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, et al.**

Civ. A. No. 69–B–25.

United States District Court
S. D. Texas,
Brownsville Division.

Nov. 3, 1969.

---

3. Offshore Company v. Robison, 266 F.2d 769 (5th Cir. 1959) ; 46 U.S.C. § 713.

Ewers, Toothaker, Ewers, Abbott & Evins, James C. Abbott and R. Glenn Jarvis, McAllen, Tex., for plaintiff.

Arthur Gochman, San Antonio, Tex., for defendants.

## MEMORANDUM AND ORDER

GARZA, District Judge.

This is a suit for damages as the result of an alleged breach of a Collective Bargaining Agreement between the parties.

The Plaintiff is a Texas corporation having its principal place of business in Brownsville, Cameron County, Texas, and is in the business of repairing airplane engines.

The Defendants are labor organizations within the meaning of Section 2(5) of the Labor Management Relations Act of 1947, 29 U.S.C. § 152(5), representing employees in an industry affecting commerce within the meaning of Section 301 of said Act, 29 U.S.C. § 185.

The Defendants were at all times material herein the exclusive and recognized collective bargaining agents of Plaintiff's employees in a bargaining unit found appropriate by the National Labor Relations Board pursuant to Section 9 of said Act, 29 U.S.C. § 159.

This Court has jurisdiction under the provisions of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

Venue of this action lies in this Court by virtue of Section 301(c) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(c).

The Plaintiff is suing for damages claimed to have been incurred as the result of an alleged illegal work stoppage by the Defendants in violation of a Collective Bargaining Agreement between the respective parties.

The Defendants have filed a motion to stay the proceedings in this case pending arbitration, alleging that the arbitration provisions of the Collective Bargaining Agreement in question are binding upon the parties in this case.

Under normal circumstances a stay order would be appropriate. Title 9, Section 3, U.S.C., reads as follows:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

The alleged violation which took place was a work stoppage in violation of Article 11 of the Collective Bargaining Agreement.

There is no question that this violation was a proper one for arbitration; in fact, the arbitration should have ensued prior to any work stoppage.

The work stoppage occurred on or about November 4, 1968, and continued until on or about December 16, 1968. The Plaintiff proceeded with the filing of its grievance and sought arbitration of the dispute. The Defendants for unknown reasons would not discuss, and refused to enter into arbitration proceedings. As the result, the Plaintiff brought this action for damages.

A brief history of Plaintiff's efforts to comply with the Collective Bargaining Agreement is needed. The following is a chronological sequence of those events:

The Collective Bargaining Agreement in question was in full force and effect through November 8, 1968.

The strike by Defendants occurred on November 4, 1968.

On November 14, 1968, Mr. Zarski, President of Plaintiff, filed a grievance pursuant to Sections 11 and 13 of Article IX of the Agreement in question.

The grievance complains of the illegality of the strike of November 4, 1968, and demands damages.

The Plaintiff requested a conference within two weeks, as called for by Section 11 of Article IX of the Agreement.

On November 26, 1968, the Plaintiff sent the Defendant a telegram requesting to know Defendant's position in relation to the grievance.

On November 27, 1968, the Defendant sent Plaintiff the following letter:

"Dear Mr. Zarski:

"After thorough investigation of your grievance I find no place where the Union has violated the Agreement.

Very truly yours,

J. D. Crow
General Chairman."

Letter of December 6, 1968, from Plaintiff to Defendant, stating Plaintiff's desire to arbitrate the grievance and with intention to follow the arbitration procedure as set forth in the Agreement.

Also on December 6, 1968, a letter was sent by Plaintiff to the Federal Mediation and Conciliation Service, requesting that a list of five arbitrators be supplied as called for in the agreement.

On December 11, 1968, a list of five arbitrators was sent to the parties by the Federal Mediation and Conciliation Service.

The last communication is a letter from Plaintiff's attorney to Defendant, which reads as follows:

"December 18, 1968.

"RETURN RECEIPT REQUESTED
CERTIFIED MAIL NO. 572601

"J. D. Crow, General Chairman

"I.A.M. and A.W., District 146
Room 200, 2727 Okalawn
Dallas, Texas 1 75219

"Re: I.C.E.S. Grievance Against International Association of Machinists and Aerospace Workers and. District 146 dated November 14, 1968

"Dear Mr. Crow:

"Referring to Mr. Zarski's letter to you of December 6, 1968, and his letter to the Federal Mediation and Conciliation Service of the same date regarding the above matter, I have received from said Service a copy of a letter directed to you and Mr. Zarski enclosing a panel of arbitrators.

"I understand from the correspondence, or lack thereof, and especially my telephone conference with you of November 29, that the Union is unwilling to arbitrate this matter. As an additional effort, however, but realizing that this matter has been pending for some time, please contact me by 12:00 noon on December 24, 1968, so that the arbitrator can be chosen from said list. If I do not hear from you by such time, I will assume that the Union is refusing to arbitrate said grievance.

"Yours very truly,

"R. Glenn Jarvis"

No communication from Defendant agreeing to arbitration was ever received by Plaintiff after November 29, 1968, until March 4, 1969, when this lawsuit was filed.

For the very first time, on April 16, 1969, the Defendants state they are ready and willing to arbitrate the dispute.

This Court thinks the request comes too late.

This Court is fully aware that arbitration is favored whenever possible.

The Collective Bargaining Agreement involved here is a broad one. This Court has no doubt that the issues involved are ones subject to arbitration under the Agreement.

The Defendants rely heavily upon the case of Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionary Workers International, AFL–CIO, et al., 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474, which involved a similar fact situation.

In that case the motion to stay pending arbitration was upheld.

However, the Court upheld the District Court's ruling that the defendant (Union) was not in default in proceeding with arbitration.

In that case the strike occurred on January 2, and the plaintiff (Company) filed the suit for damages on January 4, without using the grievance procedure or requesting arbitration.

In our case, the Plaintiff (Company) immediately after the alleged violation, followed the grievance procedure and demanded arbitration on numerous occasions. In short, the Plaintiff (Company) followed the proper procedure zealously.

The Defendant (Union) refused the grievance and refused to arbitrate. This Court finds that refusal unreasonable from the evidence before me.

Having refused to arbitrate on numerous occasions and offering no evidence of any valid reason for not doing so, the Defendant (Union) is in default in proceeding with the arbitration pursuant to Title 9, Section 3, U.S.C. Cuneo Press v. Kokomo Paper Handlers Union No. 34, 7 Cir., 235 F.2d 108 (1956), cert. den. 352 U.S. 912, 77 S.Ct. 149, 1 L.Ed.2d 119; Barber and Ross Co. v. Cornell & Co., D. C., 242 F.Supp. 825, aff'd. 123 U.S.App. D.C. 378, 360 F.2d 512.

In using Article 9, Section 3, U.S.C., this Court is not saying that the U. S. Arbitration Act is applicable per se to this type of case, but certainly the Act (supra) is part of the federal law to which the courts may resort in implementing federal policy in this area. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972 (1957); Local 1416, International Ass'n of Machinists v. Jostens, Inc., D. C., 250 F.Supp. 496 (1966); International Ass'n of Mach. & A. Wkrs., v. General Electric Co., 2 Cir., 406 F.2d 1046 (1969); Newark Stereotypers' U. No. 18 v. Newark Morning Ledger Co., 3 Cir., 397 F.2d 594 (1968), cert. den. 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365; General Electric Co. v. Local 205, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957).

This Court is in no way departing from the Drake case, supra.

Under the unique facts of this case, the Defendant (Union) was in severe default in proceeding with arbitration, whereas such default was not present in the Drake case, supra. It would be contrary to industrial peace and congressional intent to grant a stay order in this particular case.

The Defendant Union's motion to stay this suit pending arbitration is hereby denied.

This Court does find that there is a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Therefore, I hereby authorize the parties, if either so desires, to make application for appeal to the United States Court of Appeals for the Fifth Circuit, pursuant to 28 U.S.C. § 1292(b).

Clerk will send copies of this Memorandum and Order to counsel for the parties.