Sheldon Rosenberg, Scranton, Pa., Lawrence T. Zimmerman and Stephen C. Yohay, Washington, D.C., for plaintiff.

Robert D. Mariani, Scranton, Pa., for defendant.

The TRANE COMPANY, Keystone Industrial Park, Dunmore, Pennsylvania, Plaintiff,

v.

LOCAL 730, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL–CIO c/o Joseph Kolankiewicz, Keystone Industrial Park, Dunmore, Pennsylvania 18512, Defendant.

Civ. A. No. 79–792.

United States District Court, M. D. Pennsylvania.

Aug. 17, 1979.

## MEMORANDUM

CONABOY, District Judge.

This is an action for damages and injunctive relief instituted by the Plaintiff pursuant to Section 301(a) of the National Labor Relations Act (NLRA), 29 U.S.C. Section 185(a).

The basic thrust of the Plaintiff's action is the allegation that "Defendant has prevented employees from exercising their voluntary choice to accept overtime, and has violated its pledge of support to urge acceptance of overtime work, all in violation of Section 22 of the Collective Bargaining Agreement."[1]

Before the Court presently is the Defendant's "Motion to Dismiss or in the alternative to stay proceedings pending arbitration." In resisting the Defendant's motion, the Plaintiff company raises the singular question whether or not its claim for damages is referable to arbitration under the terms of the Labor Management Agreement between the parties. Counsel for both parties correctly point out that the answer to this question depends on an interpretation of the appropriate sections of the agreement, since the obligation to submit a dispute to arbitration is wholly contractual. See *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462; *Boeing Co. v. Int'l Union, V.A., A & A Imp. Workers*, 370 F.2d 969 (3d Cir. 1969).

Sections 82, 83 and 84 of the Agreement are included in the Section generally titled "Grievances". In addition to these Sections of the Agreement, the Defendants would

---

1. Count II of Plaintiff Trane Company's Complaint was voluntarily withdrawn by Plaintiff with the consent of the Defendant by motion filed on August 6, 1979.

also have the Court include in its effort at interpretation, a reference to Section 94, which is included under the general title "No Strike Clause". These Sections read as follows:

## GRIEVANCES

82. Should differences arise between the Company and an employee or a group of employees or the representatives of the Union as to the interpretation, application of, or compliance with the provisions of this Agreement, the same will be settled as follows:

Step I—The employee will discuss his grievance with his foreman, with or without his steward present.

Step II—If the discussion in Step I does not settle the grievance, there shall be a discussion between the foreman and steward. The foreman will give his answer by the end of the work day following the discussion with the steward.

Step III—If the foreman's answer in Step II does not settle the grievance, the Chief Steward will within 2 working days, request a discussion with the General Foreman. Such discussions will take place within 2 working days of the request. The department steward may be present at this discussion. The General Foreman will answer the grievance within 2 working days following this discussion.

Step IV—If the General Foreman's answer does not settle the grievance, it will be reduced to writing and presented to the Industrial Relations Manager within 5 working days of the General Foreman's answer. The grievance will be discussed at the next grievance meeting. Such meeting will normally be held on the Tuesday preceding the 4th Sunday of each month at 1:30 p. m. However, if necessary, a special grievance meeting may be held on request. In the event a grievance is not processed to the next step of the grievance procedure within the specified time, the grievance will be considered settled.

However, the Union may request and the Company will approve an extension of up to 7 calendar days at any step previous to Step V. In the event management does not answer the grievance within the prescribed times, the grievance will proceed to the next Step. Step V—If the grievance is not satisfactorily settled after these steps, a request for arbitration must be made within 30 days from the meeting in Step IV. If no such request is received, the grievance shall be considered settled.

The parties will select an arbitrator from a panel of arbitrators submitted by the Federal Mediation and Conciliation Service.

83. A question raised by either party as to the arbitrability of a grievance shall be subject to arbitration and if deemed arbitrable, the issue may be decided at such hearing. It is understood that any question involving general wage rates or the labor grade structure shall not be subject to arbitration. The function of the arbitrator shall be of a judicial nature. The decision of the arbitrator shall be final and binding upon the parties, but he shall not have the power to add to, subtract from or modify the terms of the contract and shall decide only the issues properly before him. An arbitrable grievance must involve a question of interpretation or application of, or compliance with the terms of this contract.

Arbitration expense is to be borne equally by the Company and the Union.

84. Controversies may arise of a nature so general as directly to affect all or a major portion of the employees of any department and it is therefore agreed that issues of this nature need not be subjected to the entire grievance procedure but may be initiated by either party at a step prior to arbitration deemed appropriate by the party presenting the grievance. However, the Union Executive Board will discuss the problem with management in order to work out a possible solution before the dispute is sub-

mitted as a grievance. It is not intended that this paragraph will apply when an individual is grieved. The Executive Board will represent the Union on grievances of the type as outlined in this paragraph.

94. Since the procedures within this contract provide for peaceable means to settle all differences, disputes, complaints and grievances that may arise between them, the Union will not authorize, encourage or participate in any work stoppage or slowdown and the Company will not authorize any lockout. The Company will have the right to discipline or discharge any employee who initiates, instigates or participates in an illegal work stoppage or slowdown.

In an effort to interpret the Agreement between the parties, we were guided by the reasoning in a variety of decisions, including the main case cited by the Plaintiff, *Affiliated Food Distributors, Inc. v. Local Union, 229,* 483 F.2d 418 (3d Cir. 1973), cert. denied, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 420, as well as the main case cited by the Defendant, *Supermarket Corp. v. General Drivers and Helpers Local U. No. 229,* 340 F.Supp. 1143 (M.D.Pa.1972).[2]

As reference to these cases will show however, there is an infinite variety of headings, wording and styling used in framing arbitration or grievance clauses in labor agreements and detailed references as to the large number of cases that have interpreted these agreements would not be extremely enlightening or helpful.

As can easily be imagined, there are cases holding company claims for damages to be included in arbitration provisions, as well as those that hold such claims not to be so included. One readily concludes therefore, that each such arbitration—grievance clause must be examined independently. There is the mandate of the *United Steelworkers v. Warrior & Gulf Nav. Co.,* 363

U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) case, however, which runs through all of these cases and which is the polestar in determining the framework within which said clauses must be interpreted.

As is pointed out in almost every Opinion discussing arbitration, there is a clear Congressional policy favoring private, extra-judicial resolution of labor-management disputes. In this regard, as we have mentioned, the Supreme Court of the United States in *United Steelworkers of America v. Warrior and Gulf Nav. Co.,* supra, at 581–584, 80 S.Ct. at 1352–1354, has set forth the following general guidelines to be followed in resolving this type of dispute.

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement.

.    .    .    .    .

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

.    .    .    .    .

In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."

When we look to the specific language used in the Sections of the contract under consideration, we find some wording that seems to be all inclusive when one is trying to determine whether it refers only to use

---

2. See also: *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462; *Drake Bakeries v. Am. Bakery and Confectionery Workers,* 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474; *Boeing Co. v. International Union, U.A.A. & A. Implement Workers,* 370 F.2d 969 (3d Cir. 1967); *Mason-Dixon Lines, Inc. v. Local Union No. 560, Int'l Brotherhood of Teamsters,* 443 F.2d 807 (3d Cir. 1971).

of arbitration by the employees or whether it means use of arbitration by both the company and the employees or the union. For instance, we find the following:

In Section 82: Should differences arise between the *company* and *an employee* or *group of employees* or *the representative of the union* as to the *interpretation, application* of or *compliance with the provisions* of this agreement, the same will be settled as follows: . . . .

And in Section 83: A question raised by *either party* as to the arbitrability of a grievance shall be subject to arbitration . . . .

And in Section 84: Controversies may arise of a nature so general as to directly affect all or a major portion of the employees of any department and it is therefore agreed that the issues of this nature need not be subjected to the entire grievance procedure, but may be initiated by *either party* at a step prior to arbitration. . . .

And then again in Section 94: Since the procedures within this contract provide for peaceable means to settle *all* differences, disputes, complaints and grievances that may arise *between them*, . . . (emphasis added)

Certainly there is nothing in the wording in any section of the contract which would specifically *exclude* company grievances from being subject to the arbitration-grievance procedure. On the other hand, the language quoted above, and the general context of the agreement, seem to indicate that whatever industrial disputes arise, whether they are on the part of the company or the employees or the union, they should be settled in a peaceful, agreed-upon manner, to wit, the arbitration route.

The company does make the interesting argument that some of the steps in grievance procedure would indicate that it would be union or employee personnel handling the grievances and that this would put the company in a strange position to ask either a union member or one of its own employees to handle its grievance. On the other hand, the general tenor of the procedure set forth seems to indicate clearly that where there is a company grievance or a grievance that affects a large number of employees, that there can be an agreed upon procedure to eliminate the basic grievance steps and go almost directly to arbitration. The use of some common sense in the interpretation and application of these sections of the contract would make arbitration readily available to both sides in matters such as exist in the Complaint before this Court and between the parties hereto.