PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* CENTRAL MERCEDITA, INC., ET AL., Respondents.

No. JRT-66-8.        Decided May 12, 1967.

478

*J. F. Rodríguez Rivera, Acting Solicitor General, Marta Ramírez Vera, Celia Canales González,* and *Luis M. Rivera Pérez* for petitioner. *Jesús Hernández Sánchez* for the Insular Labor Association. *Orlando J. Antonsanti* and *Ernesto González Piñero* for respondents.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Between the respondents and the labor organization, Insular Labor Association, there existed collective bargaining agreements[1] which contained identical arbitration clauses.[2] As a result of certain differences which arose, the

---

[1] In order to cover the unit called "Plant Clericals", Central Mercedita, Inc., and Puerto Rican and American Sugar Refinery, Inc., signed an agreement with the Union which was in force for a term of three years from July 12, 1963; Heirs of J. Serrallés executed an agreement with the Union to cover the unit of construction employees in field work for an identical term, but from April 24, 1963.

[2] "Art. VII

*"Grievance Committee*

"1. A Grievance Committee is hereby created which will be composed of the representatives of the Union and two representatives of the

contracting parties agreed to submit to an arbitrator designated by the Secretary of Labor the following submission agreement:

"To determine whether the Grievance Committee created by virtue of the collective agreements . . . may assume jurisdiction to hear complaints for damages brought by the Union

---

Employer. This committee shall be in charge of considering and deciding all the complaints, claims, and controversies which may arise as a result of the workers' employment whether the same are in connection with wages, discharges, punishment, work classifications, working conditions, and any other conditions inherent to the workers' employment, and of the application of the terms of this agreement. For the purpose of expediting the procedure, the parties agree to use the following procedure in the consideration and decision of the cases which may arise:

"(a) The worker, by himself or through any representative of the Union, shall discuss the matter with the supervisor or immediate foreman in the first instance not later than forty-eight (48) hours after the occurrence of the complaint.

"(b) If the controversy thus submitted is not decided within the term of twenty-four (24) hours after its submission, then the claimant worker will be bound to go to the Union's offices to submit his controversy or complaint.

"(c) The *President of the Union,* or his assigned representative, shall immediately submit the worker's complaint in writing to the Employer specifying therein in what does the complaint, claim or grievance consist, the steps taken by the worker in accordance with the provisions of paragraph (a) of this article, as well as the witnesses.

"(d) Once the Employer receives the brief of the Union, he shall answer said brief or complaint within the next three (3) working days after the date on which he received the Union's brief. The Employer's answer shall state clearly his allegations in the matter, witnesses if any, and any other proof which the Employer may have to support his position, if it were adverse to the worker.

"(e) In case the Employer's position is different from that of the Union, the Grievance Committee shall meet immediately and take cognizance of the matter. The Employer shall furnish the services of a stenographer reporter to the Committee. The stenographer shall transcribe the notes of the daily hearings and shall deliver a copy to the Union and another copy to the Employer, the stenographer keeping the original of said notes.

"(f) The meeting of the Committee to take cognizance of the complaint or claim of the worker shall be held not later than the three (3) working days following the date of Employer's answer to the complaint.

"(g) Once all the evidence has been heard and all the notes transcribed, the Committee shall meet to give its decision according to the evidence and to the Committee's best judgment. The Committee's decision

pursuant to the articles which the Committee deems applicable." From the sparse elements which the record contains we infer that the Union claims damages for alleged violations of the agreement committed by the employer.[3]

At the hearing held before the arbitrator the position adopted by the companies' attorney was, in synthesis, that (a) the Union's claim did not arise from the interpretation or application of any clause of the agreement and that the proper procedure was an action for damages for which the appropriate forum was the courts and not the Committee; and (b) that from the text of the clause of the agreement which establishes the grievance committee it is inferred

---

must be of three votes against one.

"(h) In case that the Committee is unable to reach a decision, the matter, with all its notes and evidence, shall pass to the consideration of an arbitrator who shall be designated by the Secretary of Labor of Puerto Rico. The arbitrator shall have jurisdiction to settle the dispute on the evidence submitted and believed by the Committee or he may reopen the hearing and request additional evidence, *motu proprio* or at the request of any of the parties.

"(i) In any case, the arbitrator's decision should not take longer than thirty (30) days after the date on which the matter is submitted to him.

"(j) The Committee's decision by majority vote as well as the arbitrator's decision *shall be according to law and as to the facts, final and unappealable* for the worker as well as for the Union and the Employer.

"(k) In case the decision of the Committee or of the arbitrator were favorable to the claimant worker, the Employer shall be bound to compensate the worker all the wages which the worker may have not received provided the latter has complied with all the steps set forth herein before. The Employer also any other recommendation rendered by the Committee or the arbitrator [*sic*]. Both the Committee and the arbitrator shall not have authority to change the terms of this agreement but only to interpret it." (Italics ours.)

[3] As it is inferred from certain statements made by Mr. Waldemiro Arroyo, representative of the Union, at a hearing held on January 19, 1965 before the arbitrator, these alleged violations gave rise to the presentation of a charge of unfair labor practice against the employer as a result of the refusal to arbitrate which was dismissed by the Chairman of the Labor Relations Board, "when Mr. Pedro G. Goyco, Director of Labor Relations of the employers, changed his position and announced that he was willing to submit the jurisdictional question to the Committee."

that the only matters that this committee may consider are those which arise from the relations between the enterprises and the individual workers, but not the union, whose only mission was to represent the workers in such cases in which they were interested or were parties. On its part the Union insisted that the clause providing arbitration was ample enough to vest the Grievance Committee with power to take cognizance of the controversy in issue, in relation to the subject matter as well as to the identity of the labor organization as complainant *pro se.*

The arbitrator, after considering the allegations of the parties, rendered an award which in its pertinent part reads as follows:

"The decision to be rendered in this case should be in agreement with the doctrine established by the Supreme Court of the United States in the cases *Steelworkers* v. *Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960), 46 LRRM, 2423; *Steelworkers* v. *American Manufacturing Company,* 363 U.S. 564, 46 LRRM, 2414; *Steelworkers* v. *Warrior and Gulf Navigation Company,* 363 U.S. 574; 46 LRRM, 2416 and *Ceferino Pérez* v. *Puerto Rico Water Resources Authority,* decided by the Supreme Court of Puerto Rico on January 25, 1963.

"In these cases it was determined that everything which is not specifically excluded in the arbitration clause of a collective agreement is arbitrable and that in case of doubt as to the arbitrability or nonarbitrability it is decided in favor of arbitrability.

"From a slight reading of Article VII of the collective agreement establishing the Grievance Committee, the scope of its jurisdiction is inferred. Said jurisdiction is so broad that it can be stated positively that it includes every complaint, claim, and controversy which may arise as a consequence of the working condition subject to collective bargaining. In the absence of an express provision of exclusion or of jurisdictional limitation and pursuant to the ruling established in the aforecited cases, we believe that the claims for damages allegedly caused by violations of the contractual obligations are arbitrable."

In accordance with the award issued the Union urged the companies to hold the corresponding meeting of the Committee to take cognizance of the merits of the claim for damages filed by the Union for violation of the agreement. In view of the employers' refusal, the Board requests us to enforce the award.[4]

1. (a) Respondents maintain that the arbitrator went beyond his jurisdiction. They rely on an analysis of the arbitration clause and on the nature of the claims filed by the Union. However, at this stage of the proceedings, the interpretation of Art. VII of the agreement is not controlling nor can it be discussed again, unless the award were contrary to law, since precisely what was submitted to the arbitrator's consideration in the submission agreement was the determination on the arbitrable character of the claims for violation of the agreements. *Labor Relations Board* v. *Caribbean Container Co.*, 89 P.R.R. 694 (1963); Fleming, *Reflections on the Nature of Labor Arbitration*, 61 Mich. L. Rev. 1245 (1963); Note, *Arbitration: Scope of the Arbitrable Dispute: Dispute Arbitrable Even Though Prima Facie Without Merit*, 9 U.C.L.A. L. Rev. 218 (1962); see also, *López* v. *Destilería Serrallés*, 90 P.R.R. 241 (1964); *Labor Relations Board* v. *Caribbean Container Co.*, 89 P.R.R. 726 (1964); *Labor Relations Board* v. *Sindicato Obreros Unidos*, 92 P.R.R. 57 (1965).

■■■ (b) Although as a general rule an award may be challenged or set aside if there is some defect or insufficiency in the submission, *Labor Rel. Board* v. *Valencia Baxt Express*, 86 P.R.R. 267 (1962) and cases cited therein, such rule is not applicable to the case at bar. The theory that the employer's representatives went beyond their authority by having submitted to arbitration a controversy, which under the

---

[4] Respondents appeared in the Superior Court, San Juan Part, to challenge the award. At the request of the Board we granted a stay of the proceedings in aid of our jurisdiction.

terms of the agreement was not, is a reiteration of the point we discussed before. It is correct that the committee and its members lack power to "modify" the terms of the agreement but they have express authority to "interpret" it. One of the functions of arbitration committees is precisely to determine as to the arbitrability of a controversy. Not to admit such power would be tantamount to, as we said in *Labor Relations Board* v. *Caribbean Container Co.*, 89 P.R.R. 694 (1963), "grant an absolute veto power to any of the parties which could, by simply adopting the position that a dispute is not arbitrable, thwart the purpose of said mechanism intended to settle the differences which may arise by means of a speedy and simple procedure." Respondents could have properly retained the allegation on which they now rely setting it up as a defense in the charge of unfair labor practice for violation of the agreement consisting in the refusal to submit the controversy to arbitration, which the Union has already filed. Perhaps induced by a better policy of maintaining and restoring harmony in their labor management relations they decided to consent to the Union's demand for arbitration. See, *Labor Relations Board* v. *Heirs of J. Serrallés*, *ante*, p. 325. Now when the result has been adverse, they cannot go back upon their own steps.

2. The basic allegation of the motion of opposition to our granting the Board's petition to enforce the award is that it is contrary to law because it is incumbent upon the courts, and not upon the arbitrator, to determine whether or not a controversy is arbitrable. *Atkinson* v. *Sinclair Refining Co.*, 370 U.S. 238 (1962) and its complementary *Drake Bakeries* v. *Bakery Workers*, 370 U.S. 254 (1962), citing the so-called Steelworkers cases,[5] do not lead to the result desired by respondents. They merely decide that, when in an action for

---

[5] *Steelworkers* v. *American Mfg. Co.*, 363 U.S. 564 (1960); *Steelworkers* v. *Warrior and Gulf Co.*, 363 U.S. 574 (1960); *Steelworkers* v. *Enterprise*, 363 U.S. 593 (1960).

damages for violation of the agreement under § 301 of the Taft-Hartley Act, 29 U.S.C. § 185, it is set up as a defense that the controversy is arbitrable under the terms of the contract between the parties, it is incumbent upon the courts to determine whether, as a matter of fact, the question should be previously submitted to the committee established for such purposes.[6] But it is significatively said, at page 241 in *Atkinson*, that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." But as we have seen, the submission agreement is clear on the point that the question submitted *voluntarily* dealt with the arbitrable nature of the controversy.[7]

It should not be forgotten in this respect that, contrary to our legislation, the Federal Congress decided that performance of agreements was a question for the courts. In Puerto Rico, in addition to that mechanism to elucidate the breach, we incorporated others which give jurisdiction to the Board, either through its intervention when nonperformance is charged as an unfair labor practice, or when, as in the instant case, it may invoke its power to request the enforcement of an arbitration award concerning contractual violations. See, Wollet, *The Agreement and the National Labor Relations Act: Courts, Arbitrators and the NLRB—Who Decides What*, 14 Lab. L.J. 1041 (1963). *Cf. P.R. Telephone* v. *Labor Relations Board*, 86 P.R.R. 362, 373–375 (1962).

---

[6] Scholars of the problem trace even certain differences depending on whether the controversy is one of substantive arbitration or simply procedural, that is whether the procedure prescribed in the agreement has been followed. Dunau, *Procedure Arbitrability—A Question for Court or Arbitrators*, 14 Lab. L.J. 1010 (1963).

[7] It should also be borne in mind that the doctrine has been elaborated on the margin of situations in which the enterprise has brought suit against the Union for the damages caused by breach of a "no-strike" clause. Schubert, *Arbitration and Damage Claims for Violation of the No-Strike Clause*, 16 Lab. L.J. 751 (1965).

■ Under the facts we considered in submitting the controversy on jurisdiction to the arbitration proceeding prescribed in the agreement, the parties chose the arbitrator as the forum to settle the controversy and they waived their right to litigate before the courts the question properly submitted. *Rivera* v. *Land Authority*, 83 P.R.R. 251 (1961).

The corresponding order will be entered to enforce the arbitration award issued on May 5, 1966 in the case A-15-1, implemented in the manner requested by the Board.