**LOCAL 901 TEAMSTERS, Plaintiff,**

v.

**WEISSBERG HOTEL CORPORATION, H. R. Weissberg Corporation, Weissberg Condado Corporation, Ponce dè Leon Hotel Corporation and Compañio Hotelera de Puerto Rico, Defendants.**

**Civ. No. 317–64.**

United States District Court
D. Puerto Rico.
Nov. 2, 1967.

George L. Weasler, Santurce, Puerto Rico, for plaintiff.

Rafael A. Gonzalez, San Juan, Puerto Rico, for Weissberg Corp. and Ponce de Leon Hotel Corp.

Francisco Ponsa Feliu, San Juan, Puerto Rico, for Corporacion Hotelera de Puerto Rico.

## OPINION

KILKENNY, District Judge:

This action involves an interpretation of Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185(a), and a contract entered into on October 21, 1963, between Local 901 and the Ponce de Leon Hotel Corporation, a wholly owned subsidiary of H. R. Weissberg Hotel Corporation. The agreement recognized Local 901 as the sole and exclusive bargaining agent of the Hotel's employees. The employer agreed to guarantee an opportunity for 75% of all regular employees to work a minimum of 2,800 hours during each twelve months period. Art. V, Sec. 11. The employer also agreed to deduct $1.25 per week for union dues from each employee's wages. Art. II, Sec. 4. The contract also contained provisions covering holidays, Art. VIII, Sec. 4, sick leave, Art. IX, Sec. 1, and vacations, Art. X. Under Art. XII, Sec. 1, employer agreed to contribute to Union's Health & Welfare Fund. Art. XIII, Sec. 15 provided the employer would serve his employees one free meal a day.

On June 2, 1964, the hotel ceased operations. On July 1, 1964, the newly incorporated Corporation Hotelera de Puerto Rico bought the land and buildings of the Ponce de Leon Hotel Corporation and subsequently leased them to the Hilton International Corporation. Hilton operated the premises as the San Jeronimo Hotel.

Plaintiff alleges that thirteen weeks prior to the closing of the Ponce de Leon Hotel, in open violation of the Collective Bargaining Agreement, the corporation retained for its own use and benefit the dues deducted from the employees' salaries, failed to make contributions to the Union Welfare Fund, failed to pay vacation and sick leave, discharged and laid off its employees in violation of Art. VII and since June 2, 1964, failed to provide the weekly salaries and benefits provided in the contract.

The contract provides a specific grievance procedure, which, in pertinent part, provides:

"Section 1. In the event that a difference arises between the company, the Union or the employee concerning the interpretation, application or compliance with the provisions of this agreement, an earnest effort will be made to resolve such difference in accordance with the following procedure which must be followed."

Neither party resorted to the grievance procedure in this case. Defendants now move the Court to dismiss this action for lack of jurisdiction, on the ground that the subjects of the complaint are subjects that should have been submitted to arbitration in accordance with the provisions of Art. VI, and that the Court may not entrench upon the jurisdiction of the arbitrators, nor can it enter into the merits of claims that could have been decided only in the grievance forum.

29 U.S.C. Sec. 185(a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

■ This section has been construed by the Supreme Court to mean that Federal law is the applicable law in construing a Collective Bargaining Agreement. See Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The Court has recognized the Collective Bargaining Agreement as an effort to erect a system of industrial self-government; and when the agreement provides for arbitration this should be viewed as part of the collective bargaining process itself. United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578, 580, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The rule has thus been enunciated that when the parties provide for arbitration in their Collective Bargaining Agreement this means of settlement is exclusive and resort cannot be had to the courts. See Republic Steel Corp. v. Maddox, supra; Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers, 370 U.S. 254, 82 S. Ct. 1346, 8 L.Ed.2d 474 (1962); Local 174, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., supra.

■ The court's jurisdiction in arbitration matters thus seems to be limited to determining if the collective agreement provides for arbitration, to ordering a reluctant party to arbitrate, and to ordering a party to comply with an arbitration award. United Steelworkers of America v. Enterprise Wheel & Car Corp., supra.

By Art. VI, Sec. 1, the contract provides that the grievance procedure outlined in the agreement covers disputes over the "interpretation, application or compliance" with the agreement. The agreement provides for a three step grievance "procedure".

"*Step 1.*—The aggrieved employee or employees shall first take up the grievance with the Union Steward assigned to his or her area who shall in turn take up the grievance with the head of the department in which the grievance arises.

"*Step 2.*—If the grievance is not settled at Step 1 of the procedure within two (2) working days, the grievance shall be reduced to writing and the Union Steward who handled the matter at Step 1 together with the Chief Steward may take the grievance up with the personnel director of the Hotel. The personnel director shall render a decision on a grievance so presented as soon as possible but not later than three (3) working days after it is presented to him.

"*Step 3.*—If the grievance is not satisfactorily adjusted to Step 2 of this procedure, then it shall be referred to the business agent of the Union or his authorized representative who shall take the matter up with the manager of the Hotel or with his duly authorized representative. The decision of the manager or his authorized representative on a grievance so presented shall be rendered within five (5) working days after the matter is presented to him."

Sec. 6 states that "Any grievance alleging that an employee or employees have not received pay in accordance with the terms of this Agreement or alleging discharge or disciplinary suspension without just cause shall, if not satisfactorily adjusted at Step 3 of this grievance procedure, be submitted to arbitration at the request of either the Company or the Union."

■ Plaintiff claims damages for lost salaries, unpaid union dues, vacation pay, sick leave pay, contributions to the health and welfare funds, and meal allowances. The language of the Collec-

tive Bargaining Agreement is comprehensive; it includes all disputes over interpretation, application or compliance with the agreement. There is thus little doubt but that the parties intended the grievance procedure to cover virtually every dispute which might arise. In light of the broad language used by the parties and the interpretation given similar provisions by the Supreme Court, I conclude that this matter must be referred to arbitration.

This is true even though Art. VI, Sec. 2, provides that "Any grievance not presented for disposition through the grievance procedure described herein within five (5) working days, excluding Saturdays, Sundays, or holidays after occurrence of the events giving rise to the grievance shall not be considered unless such events were unknown to the grievant."

Section 3 provides that:

"Should not appeal be taken from a decision disposing of a grievance under Step 1 or Step 2 of the grievance procedure within five (5) working days, the decision on such grievance from which no appeal was taken shall be final and binding on the Union, the Company and the employees affected thereby."

Furthermore, Section 5 contains the following language: "It is recognized that the effectiveness of this grievance procedure depends upon the prompt resolution of grievances presented thereunder."

The fact that the plaintiff in this action did not choose to follow the grievance matter procedure is of no particular significance. That procedure must be followed. 29 U.S.C. Sec. 173(d).

■ The cause must be dismissed without prejudice. Even the issues as to the effect of Art. VI, Secs. 2, 3 and 5 of the contract must first be decided under the arbitration procedure.

Consequently, plaintiff's complaint is dismissed.

It is so ordered.